## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sally Ness, | Case No. 19-CV-02882 (ADM/DTS) |
| | Judge Ann D. Montgomery |
| Plaintiff, | |
| | |
| vs. | **DEFENDANT MICHAEL O. FREEMAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| City of Bloomington, Michael O. Freeman, in his official capacity as Hennepin County Attorney, Troy Meyer, individually and in his official capacity as a police officer, City of Bloomington, Mike Roepke, individually and in his official capacity as a police officer, City of Bloomington, | |
| | |
| Defendants. | |

---

## INTRODUCTION

Plaintiff Sally Ness ("Ness") lives in a neighborhood shared with Dar al-Farooq Islamic Center and Mosque and its related school, Success Academy (together, "DAF"), in Bloomington, Hennepin County, Minnesota.  For eight years, Ness has complained about DAF's use of its own facilities, as well as DAF's use of a nearby public park, and she films and photographs adults, children, and activities at DAF and at the park to document her complaints.  After members of the public expressed concern about Ness' activities to the City of Bloomington police department, Ness filed this lawsuit to enjoin the enforcement of Minnesota's criminal harassment statute, Minn. Stat. § 609.749, subd. 2(2), against her.

Ness challenges Minn. Stat. § 609.749, subd. 2(2), under the First and Fourteenth Amendments, both facially and as applied to her.[1]   Section 609.749 provides criminal penalties for harassment and stalking, including gross misdemeanor offenses and felony offenses.   Subdivision 2(2) prohibits harassment by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means."  Ness now seeks a preliminary injunction[2] against Defendant Michael O. Freeman ("Freeman"), the Hennepin County Attorney, as well as the City of Bloomington ("City") and its police officers, Sergeant Mike Roepke ("Roepke") and Officer Troy Meyer ("Meyer") (all together, the "City Defendants"), to prevent Freeman and the City Defendants from enforcing Minn. Stat. § 609.749, subd. 2(2) against her, while this case proceeds.[3]

The fundamental problem with Ness' lawsuit is that Minn. Stat. § 609.749, subd. 2(2) does not criminalize the filming and photography in which Ness claims to want to engage.   The statute prohibits nonexpressive conduct—harassment by "follow[ing],

---

[1] Ness has failed to comply with Federal Rule of Civil Procedure 5.1, which requires particular notice to the Minnesota Attorney General that Ness' Complaint has called into question the constitutionality of a state statute.

[2] Upon filing her Complaint, Ness initially filed a motion for an ex parte temporary restraining order ("TRO") and a preliminary injunction.  (*See* Dkt. 2.)  Ness appears to have abandoned her request for an ex parte TRO and instead proceeds only on her subsequent motion for a preliminary injunction.  (*See* Dkt. 16.)

[3] Ness also seeks a preliminary injunction against enforcement of Bloomington City Code § 5.21, but that relief is requested only against the City Defendants, as Freeman has no role in the enforcement of that City ordinance.  (Declaration of Alan J. Harris ("Harris Decl.") ¶ 6.)

2

monitor[ing], or pursu[ing] another"—and it explicitly does not criminalize conduct protected by the First Amendment. In this context, Ness cannot show that she is likely to succeed on the merits of her claims against Freeman. Accordingly, the Court should deny Ness' motion for a preliminary injunction.[4]

## LEGAL AND FACTUAL BACKGROUND

### A. The Challenged Statute

As noted above, Ness asserts a constitutional challenge to Minn. Stat. § 609.749, a Minnesota statute that provides criminal penalties for stalking and harassment. In the Complaint and her opening brief, Ness includes an excerpt of Minn. Stat. § 609.749 (2018), which the Minnesota Legislature has recently amended. (*See* Dkt. 1, Compl. ¶ 18; Dkt. 19, Pl's Br. in Support of Mot. for Prelim. Inj. at 1-3.) In this response, Freeman analyzes the subdivisions of the current statute, Minn. Stat. § 609.749 (2019), that most closely align with the provisions of the prior statute cited by Ness:

> Subdivision 1. **Definition.** As used in this section, "harass" means to engage in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of the victim regardless of the relationship between the actor and victim.

> Subd. 1a. **No proof of specific intent required.** In a prosecution under this section, the state is not required to prove that the actor intended to cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated, or except as otherwise provided in subdivision 3, paragraph (a), clause (4),

---

[4] Freeman incorporates and adopts by reference the briefing of the City Defendants in response to Ness' motion for a preliminary injunction.

or paragraph (b), that the actor intended to cause any other result.

\*\*\*

Subd. 2. **Harassment crimes.** A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor: …

(2) follows, monitors, or pursues another, whether in person or through any available technological or other means;

Subd. 3. **Aggravated violations.** (a) A person who commits any of the following acts is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both: …

(5) commits any offense described in subdivision 2 against a victim under the age of 18, if the actor is more than 36 months older than the victim.

\*\*\*

Subd. 5. **Stalking.**

(a) A person who engages in stalking with respect to a single victim or one or more members of a single household which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

(b) For purposes of this subdivision, "stalking" means two or more acts within a five-year period that violate or attempt to violate the provisions of any of the following or a similar law of another state, the United States, the District of Columbia, tribe, or United States territories:

(1) this section; …

\*\*\*

4

> Subd. 7. **Exception.** Conduct is not a crime under this section if it is performed under terms of a valid license, to ensure compliance with a court order, or to carry out a specific lawful commercial purpose or employment duty, is authorized or required by a valid contract, or is authorized, required, or protected by state, federal, or tribal law or the state, federal, or tribal constitutions. Subdivision 2, clause (2), does not impair the right of any individual or group to engage in speech protected by the federal, state, or tribal constitutions, or federal, state, or tribal law, including peaceful and lawful handbilling and picketing.

Minn. Stat. § 609.749 (2019). The statute generally categorizes harassment as a gross misdemeanor offense, but certain aggravated violations, including stalking, may be punished as felony offenses. *See, e.g.,* Minn. Stat. § 609.749, subds. 2, 3, 5.

### B. Ness' Filming Activity

Ness alleges that over a period of eight years, she has raised complaints to the City, on behalf of herself and her neighbors, regarding the activities of DAF, which shares her neighborhood. (*See* Compl. ¶¶ 34-36, 42; Dkt. 20, Ness Decl. ¶¶ 2-16.) Ness describes a "controversy" regarding DAF's use of its own property and its use of a nearby public park, and she specifically alleges that DAF may be violating a conditional use permit issued by the City, as well as a joint use agreement with the City. (Compl. ¶¶ 28-38; Ness Decl. ¶¶ 2, 6.) Ness alleges that she has filmed traffic at DAF's location, photographed and filmed "the use of Smith Park by children associated with" DAF, and photographed "students being dropped off to Success Academy and weekend school[.]" (Compl. ¶¶ 48, 70, 71; Ness Decl. ¶¶ 13, 18, 19.)

Ness claims that she conducts her filming activities "from public forums, including public sidewalks, public parks, and while in her vehicle on a public street" and occasionally (with permission) "from her neighbors' driveways and from inside their homes." (Compl. ¶ 47; Ness Decl. ¶ 18.)  Ness acknowledges that she posts her photographs and videos publicly on the internet to "inform the public" about the "controversy." (Compl. ¶¶ 42, 46-48; Ness Decl. ¶ 13.)  Ness alleges that the City has "demonstrated its animosity toward [Ness'] efforts to document and report the neighborhood concerns and the City's malfeasance related to these concerns." (Compl. ¶ 43; Ness Decl. ¶ 14.)

## C. Ness' Contacts with the City's Police Officers

Ness alleges that in August 2018, the City received a complaint regarding Ness' filming activity; she does not identify the complainant or provide any other details regarding that incident, other than to claim that she was "filming traffic." (Compl. ¶ 48; Ness Decl. ¶ 19.)

Ness next alleges that on August 27, 2019, she was "approached by City police officers, including Meyer and Roepke," who advised Ness "that they were responding to a harassment complaint against her on account of her videotaping." (Compl. ¶¶ 50-51; Ness Decl. ¶¶ 20-21.)  Ness contends that the City police officers "warned" her that she may be subject to arrest for harassment if she "continued with her videotaping and [if] the complainants felt harassed or threatened[.]" (Compl. ¶ 52; Ness Decl. ¶ 21.)  Ness also quotes from a police report, in which the Success Academy principal and a parent purportedly informed the City police officers that they felt "intimidated and scared" and "worried that [Ness] may become violent towards them or their school." (Compl. ¶ 53;

6

Ness Decl. ¶¶ 22-24 & Ex. A (police report).)  Ness claims that, "[b]ecause of this latest, credible threat by the City, through its police officers Defendants Meyer and Roepke, to enforce [Minn. Stat. § 609.749, subd. 2(2)] against Plaintiff Ness," she has ceased filming. (Compl. ¶57; Ness Decl. ¶ 26.)

Ness next alleges that on October 30, 2019, she and her attorney met with two City detectives and a community liaison.[5]  (Compl. ¶ 60; Ness Decl. ¶ 31.)  Ness claims that one of the detectives confirmed that Ness is a suspect in a harassment case, based on Ness' photography and filming of DAF-related activities, including Ness' filming of children. (Compl. ¶¶ 60-64; Ness Decl. ¶ 31-33.)   Ness claims that the City detective "is investigating the matter on behalf of Defendant Freeman," and she further claims that Freeman "is preparing to prosecute [Ness] for violating [Minn. Stat. § 609.749, subd. 2(2)]."  (Compl. ¶ 62; Ness Decl. ¶ 34.)  These are the only references to Freeman in Ness' factual allegations.[6]

## D. Additional Facts

In her Complaint, Ness includes allegations that date back to 2011, relating to her concerns with DAF's activities at its property and her efforts to document and report those concerns to the City and to the public more broadly via the internet.  (*See, e.g.,* Compl.

---

[5] As noted in the City Defendants' memorandum, Caitlin Gokey is a Hennepin County employee who is embedded as a community liaison in the City police department as part of the Joint Community Police Partnership.  (Declaration of Kristin Boomer ¶ 4.)

[6] Given that Freeman is named solely in his official capacity, and given the absence of any factual allegations to suggest that Freeman has taken any action with respect to Ness or her activities, it appears that Freeman is named solely because of his statutory authority to prosecute felony offenses under Minn. Stat. § 609.749, subd. 2(2).  (*See* Compl. ¶ 16.)

¶¶ 20, 31, 34, 42, 46-47.)  Notably absent from her Complaint is any acknowledgement that in August of 2017—more than five years into what Ness describes as the "controversy" regarding DAF, its activities, and its land use—a pipe bomb was thrown into a window at DAF; three individuals have since been criminally charged in that incident, and two have pled guilty.  *See United States v. Hari et al.*, Case No. 18-CR-150 (DWF/HB).  Ness acknowledges that in August 2018—just one year after the bombing—a formal complaint was made to the City police regarding Ness' filming activity as potential harassment.  (*See* Compl. ¶ 48; Ness Decl. ¶ 19.)

On or about November 7, 2019, the City police department submitted to the Hennepin County Attorney's Office reports of Ness' filming and photographing of DAF-related activities, including children on the playground and children arriving at school.  (Declaration of Alan J. Harris ("Harris Decl.") ¶ 2.)  The Hennepin County Attorney's Office declined to bring any criminal charges against Ness for this conduct.  (*Id.* ¶ 3.)

## ARGUMENT

**I.  The Court Should Deny Ness' Preliminary Injunction Motion, Because Ness Is Unlikely to Prevail on the Merits.**

Ness is not entitled to a preliminary injunction.  A court faced with a motion for a preliminary injunction must consider four factors:  "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys. Inc. v. C L Sys. Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  Under the third *Dataphase* factor, a party seeking to preliminarily

enjoin enforcement of a state statute must demonstrate that she is "likely to prevail on the merits." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019). "This contrasts with the 'fair chance' of success that is typically required." *Id.* The "more rigorous standard reflects the idea that governmental policies implemented through legislation . . . are entitled to a higher degree of deference and should not be enjoined lightly." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (internal quotation marks and citation omitted). The party requesting the injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Here, Ness seeks to enjoin enforcement of § 609.749, subd. 2(2), a Minnesota statute. As such, she must demonstrate that she is "likely to prevail on the merits." *Rodgers*, 942 F.3d at 455. Ness cannot meet this high burden.

### a. Ness lacks standing to sue Freeman for injunctive relief and is therefore unlikely to prevail on the merits.

As an initial matter, Ness lacks standing to sue Freeman for injunctive relief. To establish standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). To satisfy the injury-in-fact requirement in a pre-enforcement challenge under the First Amendment, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [the existence of] a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Put

another way, "[t]here must be a realistic danger of sustaining a direct injury as a result of a law's operation or enforcement." *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (internal quotation marks and brackets omitted).

Here, there is no realistic danger that Freeman will prosecute Ness under Bloomington City Code § 5.21. Under Minn. Stat. § 484.87, subd. 3, "[a]ll violations of a municipal ordinance, charter provision, rule, or regulation must be prosecuted by the attorney for the governmental unit that promulgated the municipal ordinance, charter provision, rule, or regulation. *See also* Minn. Stat. § 484.87, subd. 2 (providing that in Hennepin County, the attorney of the municipality where a violation of a municipal ordinance occurred shall prosecute the violation); Minn. Stat. § 388.051 (providing the duties of county attorneys, including prosecution of felonies). Because Bloomington promulgated § 5.21, only the Bloomington City Attorney can prosecute Ness under the § 5.21. (*See also* Harris Decl. ¶ 6.)

Further, there is no realistic danger that Freeman will prosecute Ness under Minn. Stat. § 609.749, subd. 2(2) for what Ness claims she wants to do. Section 609.749 establishes harassment and stalking crimes, including felonies and gross misdemeanors.[7] Under subdivision 1, "'harass' means to engage in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of

---

[7] With some exceptions, the Hennepin County Attorney's Office does not prosecute misdemeanors and gross misdemeanors unless the defendant is also charged with a felony arising out of the same course of conduct. (Harris Decl. ¶ 6.)

the victim."  Subdivision 2(2) provides that a person who harasses by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means" is guilty of a gross misdemeanor.  The definition of "harass" in subdivision 1 and the word "another" in subdivision 2(2) both suggest that harassment under subdivision 2(2) must target an individual victim.  In other words, to engage in gross misdemeanor harassment under subdivision 2(2), a person must:  (1) follow, monitor, or pursue a victim; (2) know or have reason to know that such conduct will cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated; and (3) in fact cause that reaction in the victim.  Under subdivision 3(a)(2), harassing a juvenile victim is a felony.

Under subdivision 5(b), "'stalking' means two or more acts within a five-year period that violate or attempt to violate . . . this section," including subdivision 2(2). Subdivision 5(a) provides:

> A person who engages in stalking with respect to a single victim or one or more members of a single household which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony.

Thus, to engage in felony stalking under subdivisions 2(2) and 5, a person must:  (1) engage in gross misdemeanor harassment on two occasions within a five-year period; (2) target as the victim an individual or household; (3) know or having reason to know that such conduct will cause the victim to feel terrorized or to fear bodily harm; and (4) in fact cause that reaction in the victim.

Subdivision 7 provides that § 609.749, including subdivision 2(2), does not criminalize conduct protected by the First Amendment:

> Conduct is not a crime under this section if it is . . . protected by state, federal, or tribal law or the state, federal, or tribal constitutions.  Subdivision 2, clause (2), does not impair the right of any individual or group to engage in speech protected by the federal, state, or tribal constitutions, or federal, state, or tribal law, including peaceful and lawful handbilling and picketing.

For at least two reasons, Ness does not face a realistic danger of prosecution under § 609.749, subd. 2(2) for what she claims to want to do.  First, Ness does not allege that she plans to engage in conduct that is prohibited under § 609.749, subd. 2(2).  Ness claims that she intends to collect—by filming and photographing—information related to DAF's use of a building in her neighborhood, including "parking and traffic violations and the excessive use of DAF's facilities and public facilities, including the neighborhood park." (Ness Decl. ¶ 6; *see also id.* ¶¶ 17-19, 28.)  She intends to post the videos and photographs on public websites.  (*Id.* ¶ 13.)  Ness claims that § 609.749—and subdivision 2(2) in particular—prohibit the filming conduct in which she desires to engage.  She is wrong.

Subdivision 2(2) prohibits harassment by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means," but Ness does not claim that she wants to engage in this conduct.  The word "follow" means "to go, proceed, or come after."  *Merriam-Webster's Collegiate Dictionary* 452 (10th ed. 1996).  For example, a harasser might follow a victim by driving behind the victim wherever she goes.  *See State v. Cooley*, Case No. A18-0085, 2018 WL 6442308 at *4 (Minn. Ct. App. Dec. 10, 2018); *State v. Stockwell*, 770 N.W.2d 533, 542 (Minn. Ct. App.

2009).  The word "monitor" means "to watch, keep track of, or check usu[ally] for a special purpose."  *Merriam-Webster's Collegiate Dictionary* at 752.  A harasser might monitor a victim by attaching a tracking device to the victim's car for the purpose of tracking the victim's location.  *See State v. Hormann*, 805 N.W.2d 883, 885 (Minn. Ct. App. 2011). The word "pursue" means "to follow in order to overtake, capture, kill, or defeat." *Merriam-Webster's Collegiate Dictionary* at 950.  A harasser might pursue a victim by physically fighting another person to get to the victim.  *See State v. Berry*, Case No. A09-419, 2010 WL 3119350 at *5 (Minn. Ct. App. Aug. 10, 2010).

Here, Ness wants to film and photograph "parking and traffic violations and the excessive use of DAF's facilities and public facilities," which she often does from a parked car, driveway, or private home, without "follow[ing], monitor[ing], or pursu[ing]" any particular person.  (Ness. Decl. ¶¶ 6, 18, 28.)  For example, Ness does not claim any intention of running or driving after individuals who walk away from Ness while she is filming or photographing them.  Nor does she claim any desire to surveil individuals or track their location by filming or photographing them once they leave DAF's neighborhood.  At most, Ness claims an intention to film and photograph DAF-related activities in the physical vicinity of DAF, which may include filming and photographing people.  (*See* Ness Decl. ¶ 28.)  There is no realistic danger that this conduct, on its own, would form the basis for criminal charges under Minn. Stat. § 609.749, subd. 2(2).

Because Ness does not allege "an intention to engage in a course of conduct . . . proscribed by a statute," she lacks standing to challenge § 609.749, subd. 2(2).  *See Babbitt*, 442 U.S. at 298.  Indeed, in *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002), the

plaintiff organization lacked standing to challenge a statute's constitutionality and seek prospective relief, because the statute did not apply to the plaintiff's planned future conduct—even though a police officer had threatened to arrest the plaintiff's members under the statute. *See also Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) (plaintiffs lacked standing to seek injunction of enforcement of ordinance, on constitutional grounds, where ordinance did not apply to plaintiffs' planned future actions, even though plaintiffs were previously arrested under ordinance). Likewise, although Ness claims that Meyer and Roepke warned her that she could be subject to arrest under § 609.749 for her past conduct, this representation does not change the fact that § 609.749, subd. 2(2) does not prohibit the conduct in which Ness claims a desire to engage.

Second, Freeman—through the Hennepin County Attorney's Office—declined to prosecute Ness based on her past conduct. (Harris Decl. ¶ 4.) Ness does not claim that she intends to engage in activities that materially differ from that past conduct, and she does not allege that Freeman has ever interacted with her in any way—much less threatened her with prosecution under § 609.749, subd. 2(2).[8]

In short, because the conduct in which Ness wants to engage is not "proscribed by" § 609.749, subd. 2(2), and there is no "credible threat of prosecution" under § 609.749,

---

[8] Because the Hennepin County Attorney's Office declined to prosecute Ness under § 609.749, subd. 2(2), and Ness does not claim that she intends to engage in activities that materially differ from past conduct reported to the Hennepin County Attorney's Office for charging consideration, Ness' as-applied challenge to § 609.749, subd. 2(2) is also moot. *See Republican Party of Minn. Third Congressional Dist. v. Klobuchar*, 381 F.3d 785, 789-90 (8th Cir. 2004) (holding that as-applied challenges to state statute were moot where plaintiff's alleged violations of the statute were dismissed with prejudice).

14

subd. 2(2), Ness lacks standing to challenge § 609.749, subd. 2(2).  *See Babbitt*, 442 U.S. at 298.  She is therefore unlikely to succeed on the merits of her claims.

> **b. Ness' as-applied challenge to § 609.749, subd. 2(2), under the First Amendment, is unlikely to prevail on the merits.**

Even if Ness could establish standing, Ness' as-applied challenge to § 609.749, subd. 2(2) is unlikely to succeed.  Ness claims that subdivision 2(2) prevents her from speaking about DAF-related activities, which may necessarily include filming and photographing people.  As such, Ness claims that § 609.749, subd. 2(2) is unconstitutional as applied to her.  She is wrong because § 609.749, subd. 2(2) is directed at conduct, and any incidental burden on expression is justified.  Further, to the extent it regulates speech, § 609.749, subd. 2(2) is content-neutral, is narrowly tailored to serve a significant governmental interest, and leaves open ample alternative channels of communication.

> i. <u>Section 609.749, subd. 2(2) is directed at conduct, and any incidental burden on expression is justified.</u>

Section 609.749, subd. 2(2), as applied to Ness, does not violate the Constitution's speech protections.  The First Amendment prohibits states from making laws "abridging the freedom of speech."  U.S. Const. amends. I, XIV.  But "restrictions on protected expression are distinct from restrictions . . . on nonexpressive conduct."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011).  "[T]he First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech."  *Id.* at 567; *see also Rumsfeld v. Forum for Acad. & Instit. Rights, Inc.*, 547 U.S. 47, 62 (2006); *Young v. Ricketts*, 825 F.3d 487, 492 (8th Cir. 2016).  For example, under the incidental burden doctrine, a ban on outdoor fires can comply with the Constitution, even if the ban

incidentally forbids burning of flags, which can be symbolic speech. *Sorrell*, 564 U.S. at 567.

Ness claims that § 609.749, subd. 2(2) burdens her ability to photograph and film DAF-related activities. At least some forms of photography and filming are likely within the scope of the First Amendment's protections. *See, e.g., Am. Civil. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). However, the Eighth Circuit has not recognized a First Amendment right to record—particularly when a person seeks to record private citizens, including children. *See Kushner v. Buhta*, Case No. 16-cv-2646 (SRN/SER), 2018 WL 1866033 at *9 (D. Minn. April 18, 2018), *aff'd*, 771 Fed. App'x 714, 715 (8th Cir. 2019). (*See also* Mem. of Law by City Defs. in Opp'n to Pl's Mot. for Prelim. Inj.)

However, even if—for the sake of argument—§ 609.749, subd. 2(2) affects Ness' ability to exercise a protected right to photograph and film, any burden imposed by § 609.749, subd. 2(2) is incidental. Like the ban on outdoor fires, § 609.749, subd. 2(2) is directed at nonexpressive conduct—harassment by "follow[ing], monitor[ing], or pursu[ing] another"—which falls outside the scope of First Amendment protection. Further, § 609.749, subd. 2(2), like the ban on outdoor fires, does not target expressive conduct, and the expressive conduct allegedly affected by the law makes up only a small fraction of the conduct prohibited by the law.

When a conduct regulation—like § 609.749, subd. 2(2)—imposes an incidental burden on expressive conduct, a sufficiently important governmental interest in regulating

16

the conduct at issue justifies the incidental burden. *United States v. O'Brien*, 391 U.S. 367,

376 (1968); *United States v. Petrovic*, 701 F.3d 849, 854 (8th Cir. 2012).

> [A] government regulation is sufficiently justified [1] if it is
> within the constitutional power of the Government; [2] if it
> furthers an important or substantial governmental interest;
> [3] if the governmental interest is unrelated to the suppression
> of free expression; and [4] if the incidental restriction on
> alleged First Amendment freedoms is no greater than is
> essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.

Section 609.749, subd. 2(2) meets this standard.  First, § 609.749, subd. 2(2) is a

criminal statute, and Minnesota has authority to create and enforce its own criminal laws.

*E.g., Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993); *In re Welfare of C.P.K.*, 615

N.W.2d 832, 835 (Minn. Ct. App. 2000).   Second, § 609.749, subd. 2(2) furthers an

important or substantial governmental interest in protecting the public from dangerous

harassment and stalking.  *See State v. Orsello*, 554 N.W.2d 70, 71-72 (Minn. 1996)

(describing history of Minnesota's stalking statute); *State v. Hall*, 887 N.W.2d 847, 851

(Minn. Ct. App. 2016) (same), *overruled on other grounds by State v. Peterson*, Case No. A18-2015, 2019 WL 6691516 (Minn. Ct. App. Dec. 9, 2019).[9]

Third, Minnesota's interest in protecting the public is unrelated to the suppression of freedom of expression. Nothing in the plain language of the statute is directed toward speech or conduct inherently related to speech. Instead, it prohibits harassment by "follow[ing], monitor[ing], or pursu[ing] another" person. Minn. Stat. § 609.749, subd. 2(2). Fourth, the incidental burden on expressive conduct is no greater than is essential to serve that interest. Indeed, to the extent § 609.749, subd. 2(2) burdens Ness' photography and filming (as Ness claims), it only prohibits the noncommunicative aspect of Ness' conduct—that is, it prohibits Ness' conduct to the extent she is harassing another by "follow[ing], monitor[ing], or pursu[ing]" that person. *See O'Brien*, 391 U.S. at 382 (concluding that statute was "appropriately narrow" because it prohibited "only the independent noncommunicative impact of conduct within its reach").

_____

[9] Since January 1, 2015, the Hennepin County Attorney's Office has prosecuted six cases under Minn. Stat. § 609.479, subd. 2(2), all of which alleged dangerous conduct by the defendant. Harris Decl. ¶ 5, Exs. 1-6. Alleged conduct included: (1) following a woman in a Target store, secretly placing a cell phone in a position to record video up her skirt, and making five such recordings; (2) waiting outside the victim's house, following the victim in a car, breaking into the victim's residence, and chasing the victim upstairs; (3) driving after a victim on a bicycle and waiting outside her residence, holding a victim's door open, and grabbing the hand of a juvenile victim and chasing two juvenile victims on foot; (4) secretly placing a GPS tracker on the victim's vehicle; (5) following a victim despite her refusal to talk and efforts to get away and repeatedly returning to the victim's home; and (6) repeatedly approaching a victim and appearing at her workplace. *Id.*

Therefore, because § 609.749, subd. 2(2) is a conduct regulation whose incidental burden on expression, if any, is justified, Ness is unlikely to prevail on the merits of her as-applied challenge.

ii.  Section 609.749, subd. 2(2) is content-neutral.

In the alternative, to the extent § 609.749, subd. 2(2) imposes more than an incidental burden on expression, § 609.749, subd. 2(2) is content neutral and therefore subject to intermediate scrutiny.  "Courts will apply a strict scrutiny analysis when the regulation discriminates on the basis of content, and a more lenient analysis to content-neutral regulations."  *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 914 (8th Cir. 2017) (internal quotation marks and brackets omitted); *see also Manchester*, 697 F.3d at 686.  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

First, subdivision 2(2) is content-neutral on its face.  *See Twin Oaks*, 864 F.3d at 914; *Manchester*, 697 F.3d at 689.  Nothing in the plain language of the statute criminalizes any particular topic, message, or speaker.  Indeed, subdivision 2(2) regulates conduct unrelated to speech.  *See Hill v. Colorado*, 530 U.S. 703, 719 (2000).  It prohibits harassment by "follow[ing], monitor[ing], or pursu[ing] another" and does not explicitly target expressive activities.  Second, there is no evidence of a content-based purpose or justification for § 609.749, subd. 2(2).  *See Hill*, 530 U.S. at 719; *Twin Oaks*, 864 F.3d at 914.  The Legislature's purpose in enacting § 609.749 was not to regulate speech but to

19

protect citizens from physical injury and death.  *See Orsello*, 554 N.W.2d at 71-72; *Hall*, 887 N.W.2d at 851.  For these reasons, § 609.749, subd. 2(2) is content-neutral.

Ness argues that § 609.749, subd. 2(2) operates as a heckler's veto and is therefore content-based.  She is incorrect.  The heckler's veto doctrine provides that listeners' reaction to a speaker's message is not a content-neutral basis for regulation.  *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992); *see also, e.g., Lewis v. Wilson*, 253 F.3d 1077, 1081 (8th Cir. 2001).  In *Forsyth*, for example, an ordinance permitted the government to vary the fee for a demonstration permit depending on the estimated cost of maintaining public order.  *Id.*  The Court held that the ordinance was content-based, because it allowed the government to discriminate against demonstrators whose unpopular message might elicit unruly reactions from onlookers.  *Id.*  (*See also* Mem. of Law by City Defs. in Opp'n to Pl's Mot. for Prelim. Inj.)

Under § 609.749, the victim's reaction to "follow[ing], monitor[ing], or pursu[ing]" under subdivision 2(2) will, in part, determine whether "follow[ing], monitor[ing], or pursu[ing]" is a crime.  One element of a harassment crime under § 609.749, subd. 2(2) is that the victim must "feel frightened, threatened, oppressed, persecuted, or intimidated." Minn. Stat. § 609.749, subd. 1.  Similarly, one element of a stalking crime, which can involve a violation of § 609.749, subd. 2(2), is that the victim must "feel terrorized" or "fear bodily harm."  Minn. Stat. § 609.749, subd. 5(a).  This statutory structure makes sense, because "follow[ing], monitor[ing], or pursu[ing]" may be done innocently—for example, following a guide or playing a game of tag.

20

This statutory structure does not operate as a heckler's veto, however, because it does not criminalize expressive conduct at all—much less based on the reaction of the victim to a message communicated through expressive conduct. Indeed, nothing in subdivisions 1 and 5 changes the fact that subdivision 2(2) does not address speech or conduct that is integral to speech. Instead, subdivision 2(2) prohibits harassment by "follow[ing], monitor[ing], or pursu[ing]"—conduct that can be separated from speech-related activity. *See Stockwell*, 770 N.W.2d at 540.

iii.   Section 609.749, subd. 2(2) satisfies intermediate scrutiny.

Because § 609.749, subd. 2(2) is content-neutral, it is subject to intermediate scrutiny. *E.g., Twin Oaks*, 864 F.3d at 914. The government may impose content-neutral speech regulations so long as "they are narrowly tailored to serve a significant governmental interest, and . . . they leave open ample alternative channels for communication of information." *Ward*, 491 U.S. at 791. Section 609.749, subd. 2(2) passes this test.

First, § 609.749, subd. 2(2) serves a significant governmental interest—protection of the public from dangerous harassment and stalking. *See Orsello*, 554 N.W.2d at 71-72; *Hall*, 887 N.W.2d at 851; *see also In re Welfare of A.J.B.*, 929 N.W.2d 840, 847 (Minn. 2019) (recognizing a "proper and serious" governmental interest in "protecting all Minnesotans, and particularly our more vulnerable neighbors," from "bullying, stalking, and other forms of harassment"). The governmental interest in public safety is "fundamental, and serves as a rationale for the very formation of our state government." *State v. Hershberger*, 462 N.W.2d 393, 398 (Minn. 1990). In analyzing claims under the

21

First Amendment, the U.S. Supreme Court has repeatedly recognized a significant governmental interest in ensuring public safety and order. *E.g., McCullen v. Coakley*, 573 U.S. 464, 487 (2014).

Further, courts have recognized a significant governmental interest in protecting the public by protecting individual privacy. *E.g., Hill*, 530 U.S. at 729 ("substantial and legitimate interest" in protecting persons entering healthcare facilities from unwanted encounters with protesters); *Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988) ("significant government interest" in protecting privacy of unwilling listeners in their own homes); *Manchester*, 697 F.3d 678, 692 (8th Cir. 2012) ("significant governmental interest" in protecting the privacy of mourners participating in a funeral or burial); *see also Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. Ct. App. 2006) (governmental interest in "protecting individuals against repeated and substantial intrusions").

Second, § 609.749, subd. 2(2) is narrowly tailored to further the significant governmental interest in protecting the public. To be narrowly tailored, a regulation "need not be the least restrictive or least intrusive" means of serving the government's interest, so long as it does not restrict "substantially more speech than is necessary." *Ward*, 491 U.S. at 798-99. Indeed, the requirement of narrow tailoring is satisfied so long as the significant governmental interest "would be achieved less effectively absent the regulation." *Id.* at 799. "[T]he government's choice among means to accomplish its end is entitled to deference." *Ass'n of Cmty. Orgs. For Reform Now v. St. Louis Cty.*, 930 F.2d 591, 595 (8th Cir. 1991).

22

Section 609.749, subd. (2) is not a blanket prohibition on "follow[ing], monitor[ing], or pursu[ing] another" person.  *See Stockwell*, 770 N.W.2d at 541.  Rather, it prohibits a person from "follow[ing], monitor[ing], or pursu[ing] another" only if (1) the person engaged in such conduct has knowledge or reason to know that the conduct will cause the victim "to feel frightened, threatened, oppressed, persecuted, or intimidated," and (2) the victim does in fact have that reaction.  Minn. Stat. § 609.749, subds. 1, 2(2).  Further, subdivision 2(2) explicitly excludes constitutionally-protected speech, including handbilling and picketing, from its scope.  Minn. Stat. § 609.749, subd. 7.  With these limitations, § 609.749, subd. 2(2) is narrowly tailored.

Third, § 609.749, subd. 2(2) leaves open alternative channels of communication of information.  "The requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand."  *Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 (2d Cir. 2006); *see also Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired."); *Carew-Reid v. Metro. Transp. Auth.*, 903 F.2d 914, 919 (2d Cir. 1990) ("The First Amendment . . . does not guarantee [speakers] access to every or even the best channels or locations for their expression.").

Ness claims a desire to document and speak about alleged "parking and traffic violations and the excessive use of DAF's facilities and public facilities."  (Ness Decl. ¶ 6.) She may do this in any number of ways that do not involve "follow[ing], monitor[ing], or pursu[ing] another" person in a way that causes that person "to feel frightened, threatened,

oppressed, persecuted, or intimidated." *See* Minn. Stat. § 609.749, subds. 1, 2(2).  For example, Ness may film traffic near DAF or photograph DAF's parking lot when it is full of cars.  She may film neighbors who wish to explain on tape the impact of DAF on the neighborhood.  She may speak about DAF on her blog and her Facebook page, she may write a letter to the editor of a local newspaper, she may distribute literature encouraging others to oppose DAF's alleged violations, and she may picket DAF.

In summary, to the extent Minn. Stat. § 609.749, subd. 2(2) regulates expressive activity, it is content neutral, it is narrowly tailored to serve a significant governmental interest, and it leaves open ample alternative channels of communication.  Accordingly, Ness' as-applied challenge is unlikely to succeed on the merits.

### c.  Ness' facial overbreadth challenge to § 609.749, subd. 2(2), under the First Amendment, is unlikely to prevail on the merits.

Ness' overbreadth challenge is also unlikely to succeed.  "In the First Amendment context . . . a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted).  However, "[a]pplication of the overbreadth doctrine . . . is, manifestly, strong medicine," and the doctrine "has been employed by the Court sparingly and only as a last resort."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).  Further, "facial challenges to criminal statutes on First Amendment overbreadth grounds are especially to be discouraged."  *Republican Party of Minn.*, 381 F.3d at 791 (internal quotation marks omitted).

24

i. <u>Ness lacks standing to challenge § 609.749, subd. 2(2) based on facial overbreadth.</u>

To begin, Ness lacks standing to bring an overbreadth challenge against § 609.749, subd. 2(2).  To bring an overbreadth challenge, the party challenging the statute "must identify a significant difference between his claim that the statute is [facially] invalid on overbreadth grounds, and his claim that it is unconstitutional as applied to his particular activity." *Van Bergen v. Minnesota*, 59 F.3d 1541, 1549 (8th Cir. 1995).  Indeed, "[i]t is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." *Twin Oaks*, 864 F.3d at 912.  Here, Ness has not even alleged that § 609.749, subd. 2(2) will unconstitutionally regulate expressive conduct other than the conduct in which she wishes to engage—photographing and filming private citizens in public view.  Because she fails to provide any evidence that § 609.749, subd. 2(2) will unconstitutionally burden any other expressive conduct, she lacks standing.  For this reason alone, Ness is unlikely to succeed on the merits of her overbreadth challenge.

ii. <u>Section 609.749, subd. 2(2) is directed toward conduct, not speech, and does not prohibit a substantial amount of constitutionally protected speech.</u>

Further, even if Ness had standing to raise an overbreadth challenge, such challenge would fail.  Section 609.749, subd. 2(2) is directed toward conduct, not speech, and the conduct it proscribes is not necessarily associated with speech or other expressive activity. *See Petrovic*, 701 F.3d at 856 (rejecting overbreadth challenge to federal interstate stalking statute).  An overbreadth challenge will "[r]arely succeed against a law or regulation that

25

is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Section 609.749, subd. 2(2) addresses harassment by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means." Minnesota courts have interpreted this language as applying to conduct largely unrelated to speech. *See, e.g., Hormann*, 805 N.W.2d at 886, 895 (defendant attached a tracking device to the victim's car to monitor her movements); *Berry*, 2010 WL 3119350 at *5 (defendant followed and monitored his victim by approaching her bedroom over her mother's objection, physically fighting to get to her, and refusing to leave her home); *Stockwell*, 770 N.W.2d at 542 (defendant followed or pursued her victim by following the victim's vehicle in a bumper-to-bumper fashion, refusing to pass, until she arrived at the victim's workplace).

By contrast, Minnesota appellate courts have recently struck down other provisions of § 609.749 that focused on expressive activity—stalking-by-mail and stalking-by-telephone—rather than the type of nonexpressive conduct that is addressed in the provisions challenged here. In *A.J.B.*, the Minnesota Supreme Court considered a challenge to Minn. Stat. § 609.749, subd. 2(6) (2018), which prohibited stalking by repeatedly mailing or delivering "letters, telegrams, messages, packages . . . or any communication made through any available technologies or other objects." 929 N.W.2d at 849. The court described the statute as "broad in its reach" and "primarily focused on either speech or expressive activity," and it provided examples of protected conduct

26

prohibited by the statute.  *Id.* at 853.  The court held that subdivision 2(6) was facially overbroad and therefore unconstitutional.  *Id.* at 857.

In *Peterson*, the Minnesota Court of Appeals considered a challenge to Minn. Stat. § 609.749, subd. 2(4) (2016), which prohibited stalking by "repeatedly mak[ing] telephone calls, send[ing] text messages, or induc[ing] a victim to make telephone calls to the actor, whether or not conversation ensures."  2019 WL 6691516 at *4.  The court explained that subdivision 2(4) regulates text messages and telephone calls, which are "purely expressive and plainly protected by the First Amendment," and it provided examples of protected conduct prohibited by the statute.  *Id.* at *5-7.  As in *A.J.B.*, the court in *Peterson* held that subdivision 2(4) was facially overbroad and unconstitutional.  *Id.* at *7.

Subdivision 609.749, subd. 2(2) is unlike the stalking provisions at issue in both *A.J.B.* and *Peterson* because it regulates nonexpressive conduct—"follow[ing], monitor[ing], and pursu[ing] another."  Further, examples of protected conduct given in *A.J.B.* and *Peterson*—such as a constituent sending angry letters to a politician or a customer repeatedly calling a business to complain about pollution—would clearly not be prohibited by § 609.749, subd. (2).  As a result, neither *A.J.B.* nor *Peterson* changes the fact that Ness cannot show that her overbreadth challenge to § 609.749, subd. (2) is likely to succeed because neither case provides controlling or persuasive authority for finding that § 609.749, subd. 2(2) is unconstitutional.

In short, § 609.749, subd. 2(2) is not specifically addressed to speech or to conduct necessarily associated with speech.  Although a person might engage in expressive conduct—such as yelling or filming—while harassing by "follow[ing], monitor[ing], or

pursu[ing] another," the statute does not criminalize the simultaneous expressive conduct. Accordingly, Ness cannot show that she is likely to prove that a "substantial number" of § 609.749, subd. 2(2)'s applications are unconstitutional, "judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 473.

> **d. Ness' vagueness challenges to § 609.749, subd. 2(2), under the Fourteenth Amendment, are unlikely to prevail on the merits.**

Ness is also unlikely to prevail on the merits of her due process claims against Freeman. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972). However, as the Supreme Court has recognized, "we can never expect mathematical certainty from our language." *Id.* at 110. Here, the prohibitions of § 609.749, subd. 2(2)—both facially and as applied to Ness—are sufficiently unambiguous.

> i. <u>Ness' facial vagueness challenge is unlikely to succeed.</u>

Ness' facial vagueness challenge is likely to fail. In a facial challenge, a statute is unconstitutionally vague if: (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. To succeed in a facial vagueness challenge, the plaintiff "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).

As an initial matter, Ness makes no argument under the first prong of the void-for-vagueness test; she does not claim that a person of ordinary intelligence cannot understand

what conduct is prohibited by § 609.749, subd. 2(2).  Instead, Ness argues under the second prong, contending that § 609.749 "lacks explicit standards thereby permitting arbitrary and discriminatory enforcement."  (Compl. ¶ 97.)  Without claiming that any particular language of § 609.749 is vague, Ness argues that enforcement of § 609.749, subd. 2(2) depends "solely on whether a person is annoyed by or objects to Plaintiff exercising her First Amendment rights."  (*See* Pl's Br. in Support of Mot. for Prelim. Inj. at 15.)  She is wrong.

First, § 609.749, subd. 2(2) proscribes specific conduct—harassment by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means."  Ness does not claim that this language is vague. Indeed, in *Stockwell*, the Minnesota Court of Appeals recognized that nearly identical language in an earlier version of the statute "provide[d] sufficient clarity such that an ordinary person could understand what conduct is prohibited."  770 N.W.2d at 541. Likewise, the statutory phrase "follow[ing], monitor[ing], or pursu[ing]" is not so vague that "it authorizes or even encourages arbitrary and discriminatory enforcement." *See Hill*, 530 U.S. at 732.

Second, § 609.749, subd. 7 provides direction about what conduct is not criminal under subdivision 2(2).  It states that subdivision 2(2) "does not impair the right of any individual" to engage in constitutionally-protected speech, including "handbilling and picketing."  As recognized in *Stockwell*, "[this language] both limits the reach of the stalking offense and provides guidance to prosecutors and the courts in applying the law." 770 N.W.2d at 539.  Thus, law enforcement officers, prosecutors, juries, and judges are

29

unlikely to use § 609.749, subd. 2(2) to discriminate against viewpoints with which they disagree.

Third, the statute contains a definition of "harass", which requires a person to know or have reason to know that her "follow[ing], monitor[ing], or pursu[ing]" would cause the victim "to feel frightened, threatened, oppressed, persecuted, or intimidated." Minn. Stat. § 609.749, subds. 1, 2(2). "This knowledge scienter requirement helps the [statute] 'avoid[ ] any [constitutional] vagueness problem.'" *Disc & Tape, Inc. v. City of Moorhead*, Civ. No. 12-171, 2012 WL 591668 at *6 (D. Minn. Feb. 22, 2012) (analyzing an ordinance with a scienter requirement that the person "knows or should reasonably know" that drug paraphernalia will be used with illegal drugs, and quoting *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994)); *see also United States v. Carlson*, 810 F.3d 544, 550-51 (8th Cir. 2016) (observing that a statute's "knowingly or intentionally" scienter requirement may "alleviat[e] vagueness concerns by 'narrow[ing] the scope of its prohibition, and limit[ing] prosecutorial discretion'") (quoting *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015)); *Garner v. White*, 726 F.2d 1274, 1278 (8th Cir. 1984) ("[A] mens rea element may mitigate vagueness by insuring that those acting in good faith are not swept within a law's broad or ambiguous language."). The statute's list of victim reactions also belies Ness' claim that a victim may trigger enforcement of the statute simply by expressing annoyance or an objection.

Because Ness does not identify any word or phrase that she claims is vague, and the statute provides sufficient standards to prevent arbitrary or discriminatory enforcement, Ness cannot demonstrate that she is likely to succeed on the merits of her vagueness claim.

*See United States v. Waghela*, Case No. 18-cr-0168 (JRT/HB), 2018 WL 6027027 at *3 (D. Minn. Oct. 25, 2018) (rejecting vagueness challenge to a criminal statute which "establishe[d] sufficient guidelines to govern law enforcement"). (*See also* Mem. of Law by City Defs. in Opp'n to Pl's Mot. for Prelim. Inj.)

i.   Ness' as-applied vagueness challenge is unlikely to succeed.

Ness' as-applied challenge is also likely to fail.  In an as-applied challenge, a statute is unconstitutionally vague if it fails to put the plaintiff on notice that her conduct was criminal or if its vague standards permitted arbitrary or discriminatory enforcement of the statute against the plaintiff.  *See Hill*, 530 U.S. at 732; *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013).  Here, as described in Section I.a., above, the plain language of § 609.749, subd. 2(2) puts Ness on notice that the conduct in which she claims she plans to engage is not criminal.  Further, Ness neither alleges nor provides evidence that § 609.749, subd. 2(2) has been arbitrarily or discriminatorily enforced against her.  Therefore, Ness cannot show that she is likely to succeed in arguing that § 609.749, subd. 2(2) is unconstitutionally vague as applied to her.

## II.   The Other *Dataphase* Factors Weigh Against a Preliminary Injunction.

Finally, the remaining *Dataphase* factors counsel against a preliminary injunction of Freeman's authority to enforce § 609.749, subd. 2(2).  As an initial matter, when a movant fails to satisfy the burden of showing she is likely to succeed on the merits of her claims, "the remaining *Dataphase* factors cannot tip the balance of harms in the movant's favor."  *Planned Parenthood*, 530 F.3d at 737 n.11.  Here, Ness fails to show that she is likely to prevail against Freeman, so the Court should deny her motion.

31

Further, there is little threat of irreparable harm to Ness.  *See Dataphase*, 640 F.2d at 113.   While loss of First Amendment freedoms constitutes irreparable injury, s*ee Johnson v. Minneapolis Park & Rec. Bd.*, 729 F.3d 1094, 1101-02 (8th Cir. 2013), denying a preliminary injunction would not cause Ness to lose any First Amendment rights.  Indeed, if the Court declines to enjoin Freeman from charging Ness with a violation of § 609.749, subd. 2(2), Ness can still engage in the conduct in which she claims she wishes to engage, because as described in Section I.a., above, such conduct is not prohibited by § 609.749, subd. 2(2).  As a result, "enforcement of the [statute] is not likely to infringe on [Ness'] right to freedom of speech," and Ness has therefore failed to show she is likely to suffer irreparable harm.  *See Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017).

The balance of harms also weighs against a preliminary injunction.  *See Dataphase*, 640 F.2d at 113.  There is harm in enjoining Freeman from carrying out his statutory duties—namely, prosecuting felonies based on conduct that occurs in Hennepin County. *See* Minn. Stat. §§ 388.051, subd. 1, 484.87, subds. 2, 3; *Labnet Inc. v. U.S. Dep't of Labor*, 197 F. Supp. 3d 1159, 1176 (D. Minn. 2016) (recognizing harm in enjoining agency from enforcing regulation promulgated pursuant to legislative authority).  In contrast, declining to enjoin Freeman would not harm Ness, who—even without an injunction—can engage in the conduct in which she claims to want to engage.

Finally, the public interest counsels against a preliminary injunction.  The public has a strong interest in public safety, including protecting individuals from harassment and stalking.  *See A.J.B.*, 929 N.W.2d at 847; *Dunham*, 708 N.W.2d at 567.  As such, an injunction preventing Freeman from enforcing § 609.749, subd. 2(2) would not serve the

public interest. While the public has an interest in protection of First Amendment freedoms, *Chambers v. Babbitt*, 145 F. Supp. 2d 1068, 1072 (D. Minn. 2001), Ness' First Amendment freedoms are not endangered by continued enforcement of § 609.749, subd. 2(2). As such, the Court should deny Ness' motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Defendant Michael O. Freeman respectfully requests that this Court deny Plaintiff Sally Ness' motion for a preliminary injunction enjoining Freeman from prosecuting Ness under Minn. Stat. § 609.749, subd. 2(2).

MICHAEL O. FREEMAN
Hennepin County Attorney

Dated:  December 18, 2019        By: *s/ Christiana M. Martenson*
                            Beth A. Stack (387967)
                            Senior Assistant County Attorney
                            Christiana M. Martenson (0395513)
                            Assistant County Attorney
                            A2000 Government Center
                            300 South Sixth Street
                            Minneapolis, MN  55487
                            Telephone:  (612) 543-1357
                            Fax:  (612) 348-8299
                            Beth.Stack@hennepin.us
                            Christiana.Martenson@hennepin.us

                            *ATTORNEYS FOR DEFENDANT*
                            *MICHAEL O. FREEMAN*