# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sally Ness,

       Plaintiff,

  v.

City of Bloomington, Michael O. Freeman,
in his official capacity as Hennepin County
Attorney; Troy Meyer, individually and in his
official capacity as a police officer, City of
Bloomington; Mike Roepke, individually and
in his official capacity as a police officer,
City of Bloomington,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 19-2882 ADM/DTS

_____

Robert Joseph Muise, Esq., American Freedom Law Center, Ann Arbor, MI and William F. Mohrman, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiff Sally Ness.

John M. Baker, Esq., and Katherine M. Swenson, Esq., Greene Espel PLLP, Minneapolis, MN, on behalf of Defendants City of Bloomington, Troy Meyer, and Mike Roepke.

Beth A. Stack, Esq., and Christiana Martenson, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendant Michael O. Freeman.

_____

## I.  INTRODUCTION

On January 8, 2020, the undersigned United States District Judge heard oral argument on Plaintiff Sally Ness's ("Ness") Motion for a Preliminary Injunction [Docket No. 16]. Ness seeks to enjoin Defendants City of Bloomington, Bloomington Police Officer Troy Meyer ("Officer Meyer"), and Bloomington Police Sergeant Mike Roepke ("Sgt. Roepke") (collectively, "City Defendants") from enforcing Ordinance § 5.21 of the City of Bloomington Code ("City Ordinance"). Ness also seeks to enjoin County Attorney Michael O. Freeman, as a

representative of the Hennepin County Attorney's Office ("County Defendant"), and the City Defendants from enforcing Minnesota Statute § 609.749 ("State Harassment Statute"). For the reasons set forth below, Ness's motion is denied.

## II. BACKGROUND

Ness claims that since 2011 Dar al Farooq ("DAF")(formerly known as the Islamic Al Farooq Youth and Family Center), and in more recent years, the charter school Success Academy, have ignored and violated the Conditional Use Permit ("CUP") and Joint Use Agreements ("JUA") that the organizations obtained from the City of Bloomington, Minnesota. Compl. [Docket No. 1] ¶¶ 20-46. Ness also claims that the City of Bloomington has ignored its duties and responsibilities to enforce those agreements. Id. In addition, Ness broadly asserts that the City granted DAF and the Success Academy "beneficial" terms that gave the organizations "advantages" that hurt the neighborhood's use of public spaces, including a public playground. Id. ¶¶ 33, 38. Ness describes herself as the "point person for delivering neighborhood concerns to City officials." Id. ¶ 42. "She also maintains a public blog and Facebook page that documents many developments, observations, and concerns related to the DAF/Success Academy controversy in order to inform the public." Id.

In August 2018, Ness claims she was videotaping and photographing traffic around DAF and Success Academy. Id. ¶ 48. Ness alleges she was "collecting information for public dissemination of possible CUP and JUA violations by DAF and the Success Academy." Id. On August 22, 2018, three individuals from the City of Bloomington law enforcement[1] interviewed

---

[1] The three individuals were Detective Kristin Boomer, Officer Tracy Martin, and a community liaison, Caitlin Gokey.

Ness about a report they had received from a neighborhood parent about possible harassment and filming of children at Smith Park. Jones Decl. [Docket No. 30], Exs. 1 (Tr. Audio Recording of Aug. 22, 2018 Ness Interview) and 2 (Audio Recording of Aug. 22, 2018 Ness Interview).[2] Smith Park is a Bloomington public park with a playground that is adjacent to DAF and the Success Academy. Id. at Exs. 9, 32 and 33. Ness told her interviewers that she was at Smith Park with her grandchildren and may have been filming when she overheard other children at the park talking about her. Ness reported that the children were asking each other if they should be afraid of her. Id. at Ex. 2. She said she wanted to assure the children that they did not need to be afraid of her and asked the children where they lived because Ness thought the children were her neighbors. Id. At the time, Ness did not know if her filming had captured images of these children, but she assured the interviewers that she is very careful not to post images of children on her blog. Id. The City of Bloomington placed any investigation of this matter on inactive status in September 2018.

Just over a year later, on August 27, 2019, "Ness was collecting information for public dissemination of possible CUP and JUA violations by DAF and the Success Academy." Compl. ¶ 50. Ness was filming from a private driveway across from the school. Ness had the permission of the homeowner to use the driveway. While she was filming and photographing, Ness was approached by City police officers, including Defendants Sgt. Roepke and Officer Meyer. Id. at ¶ 50; Jones Decl., Exs. 3 (Bodycam Recording Tr. of Aug. 27, 2019 Ness

---

[2] The neighborhood has been the subject of much attention in recent years. As Ness acknowledged in her interview, the DAF/Success Academy building was targeted in 2017 by a pipe bomb. Ex. 2, 2:08-3:34; Exs. 25-26. Ness stated that some members of the community blame her for the pipe bomb. Ex. 2, 2:08, 3:06.

Interview) and 4 (Bodycam Recording of Aug. 27, 2019 Ness Interview). Sgt. Roepke told Ness he was responding to a harassment complaint about Ness's videotaping and photographing students arriving for the school day. Compl. ¶ 51. Ness alleges "City police officers warned Ness that if she continued with her videotaping and the complainants felt harassed or threatened by it, then Plaintiff Ness would be subject to arrest under the Harassment Statute regardless of Ness's intentions." Id. at ¶ 52. A viewing of the bodycam footage shows that Sgt. Roepke informed Ness she had a right to film from that location, but told her that her repeated and extended presence was intimidating to parents and school administration. Jones Decl., Ex. 3. Sgt. Roepke suggested that perhaps Ness could be more sensitive to their concerns and record the information she needed more quickly and then move on. Sgt. Roepke asked Ness to study the Harassment Statute and to consider the effect of her actions, suggesting that her repeated and extended presence was "bordering on a harassment issue." Id. at 7:17. Sgt. Roepke said, "if you're doing it to intimidate them . . . then we're bordering on charges against you, which we don't want. . . ." Id. at 7:17-7:45. After a few more minutes of conversation and listening to Ness's own complaints about DAF/Success Academy, Sgt. Roepke left Ness alone to film and photograph. He ended the conversation by saying he thought she was going "overboard on your oversight of all this, and it is turning into a harassment type issue." Id. at 11:43. "Like I said, read the [harassment] statute, make sure you're not violating it so you don't get a charge on you." Id.

In September 2019, Ness engaged in "filming activity" of "the overuse and noncompliant use of Smith Park by DAF and the Success Academy." Compl. ¶ 61. The City of Bloomington assigned Detective Boomer to investigate a September 23, 2019 incident at Smith Park, which

occurred during a Success Academy recess period. Boomer Decl. [Docket No. 27] ¶¶ 11-13; see also Jones Decl., Exs. 5 (Tr.), 6 (Bodycam Recording of October 30, 2019 Ness Interview). Detective Boomer contacted Ness and asked her to come to the police department for an interview. Boomer Decl. ¶ 7. Ness's attorney, Larry Frost ("Frost"), responded on Ness's behalf and requested that the interview be held at Ness's residence. Detective Boomer informed Frost that he also would be interviewed because he had been identified as one of the adults involved in the September 23 incident. At the October 30, 2019 interview, Frost identified himself as Ness's "civil attorney." Jones Decl., Ex. 5, at 12:40-13:02.

Detective Boomer first interviewed Frost. Frost stated that Ness was concerned about the safety of her grandchildren at Smith Park but did not want to get in trouble for taking photographs of her grandchildren using the playground equipment. As a result, Frost took photographs for her.

Detective Boomer then attempted to interview Ness, but Frost instructed Ness not to answer. Id. at 27:48-45:27. Ness did state she was using her phone to make audio recordings of Frost speaking to other people at the park, not to take pictures. Id. at 44:06-44:08. After the interview, Ness was left with "concerns and fears that she will be prosecuted under the Harassment Statute because she videotapes or photographs in a public forum information for public dissemination regarding the DAF/Success Academy controversy." Compl. ¶ 66.

Ness claims "filming in a public forum information for public dissemination regarding the DAF/Success Academy controversy is fully protected by the First Amendment." Id. ¶ 58. She argues Minnesota Statute § 609.749 and City Ordinance § 5.21 are unconstitutional because Defendants have discussed possible enforcement of those statutes against her based on her

5

filming and photographing. In this Motion, Ness specifies she is "not asking the Court to make a final ruling on the facial validity of the challenged Minnesota statute or the challenged City ordinance." Pl.'s Reply [Docket No. 47] at 1. Rather, Ness is asking the Court to enjoin City Defendants and Hennepin County from enforcing the statute and ordinance against her during the pendency of the lawsuit, so that she can film and photograph without fear of prosecution.

Relevant portions of Minn. Stat. § 609.749 (2019) read:

> **Subdivision 1.** Definition. As used in this section, "harass" means to engage in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of the victim regardless of the relationship between the actor and victim.
>
> **Subd. 1a.** No proof of specific intent required. In a prosecution under this section, the state is not required to prove that the actor intended to cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated, or except as otherwise provided in subdivision 3, paragraph (a), clause (4), or paragraph (b), that the actor intended to cause any other result.
>
> . . .
>
> **Subd. 2.** Harassment crimes. A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor: . . .
> (2) follows, monitors, or pursues another, whether in person or through any available technological or other means;
>
> . . .
>
> **Subd. 3.** Aggravated violations.
> (a) A person who commits any of the following acts is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both: . . .
> (5) commits any offense described in subdivision 2 against a victim under the age of 18, if the actor is more than 36 months older than the victim.
>
> . . .
>
> **Subd. 5.** Stalking.
> (a) A person who engages in stalking with respect to a single victim or one

6

or more members of a single household which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.
    (b) For purposes of this subdivision, "stalking" means two or more acts within a five-year period that violate or attempt to violate the provisions of any of the following or a similar law of another state, the United States, the District of Columbia, tribe, or United States territories:
    (1) this section;

. . .

    **Subd. 7.** Exception. Conduct is not a crime under this section if it is performed under terms of a valid license, to ensure compliance with a court order, or to carry out a specific lawful commercial purpose or employment duty, is authorized or required by a valid contract, or is authorized, required, or protected by state, federal, or tribal law or the state, federal, or tribal constitutions. Subdivision 2, clause (2), does not impair the right of any individual or group to engage in speech protected by the federal, state, or tribal constitutions, or federal, state, or tribal law, including peaceful and lawful handbilling and picketing.

Minn. Stat. § 609.749 (2019).

On October 28, 2019, the City of Bloomington's City Council approved revisions to the City Code. Relevant portions of City Ordinance § 5.21 now read:

> The rules and permits in this section are required to ensure the safety and general welfare of the public and the quiet and orderly use and enjoyment of the city's parks. The City Council may adopt fees and policies pursuant to this section in furtherance of these objectives. The following regulations shall apply to all city parks. . . .
>
>     (24) No person shall intentionally take a photograph or otherwise record a child without the consent of the child's parent or guardian.

City Ordinance § 5.21 is enforced with § 5.22, which penalizes such behavior as a petty misdemeanor.

Although the City Ordinance was not mentioned during Ness's October 30, 2019 interview, Ness now fears that the City will use the Ordinance, in addition to the State

7

Harassment Statute, to prevent her from exercising her First Amendment rights to film and photograph in a public forum such as Smith Park. Compl. ¶¶ 79-81, 83-86.

### III.  DISCUSSION

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see Occupy Minneapolis v. Cty. of Hennepin, 866 F. Supp. 2d 1062 (D. Minn. 2011). The court considers four factors in determining whether a preliminary injunction should issue:  (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between the harm alleged and the harm that the relief may cause the non-moving party; (3) the movant's likelihood of success on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative and the "pragmatic approach is presupposed." Id. at 113.

Ness's request for preliminary injunction rests on two statements of law. First, Ness argues that the "First Amendment fully protects Plaintiff's right to videotape and photograph in a public forum. . ." Pl.'s Br. [Docket No. 19] at 12. Second, Ness argues that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," Elrod v. Burns, 427 U.S. 347, 373 (1976).

**A.  Likelihood of Success on the Merits**

When, as here, a plaintiff seeks a preliminary injunction to enjoin legislative acts, the Court applies a more rigorous standard than the "fair chance of prevailing test;" the Court must find that the party seeking relief is "likely to prevail on the merits." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 730 (8th Cir. 2008) (en banc). Ness has not satisfied this

more rigorous showing.³

Facial challenges are disfavored. Wash. St. Grange v. Wash. St. Republican Party, 552 U.S. 442, 449 (2008). A plaintiff's facial challenge can only succeed by "establishing that no set of circumstances exists under which the Act would be valid." Id., at 450-51 ("Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones record."). Instead of establishing that no set of circumstances exists under which the laws would be valid, Ness asserts a *per se* (or categorical) First Amendment right to record in a public forum information relating to a public controversy for public dissemination. In essence, Ness is arguing that if filming is fully protected by the First Amendment, then there are no circumstances under which a restriction on filming would be constitutional.

Defendants rebut this asserted categorical right by citing a recent Eighth Circuit case which did not fully recognize recording as protected by the First Amendment. Kushner v. Buhta, No. 16-cv-2646 (SRN/SER), 2018 U.S. Dist. LEXIS 65266, at *29 (D. Minn. Apr. 18, 2018), aff'd, 771 F. App'x 714, 715 (8th Cir. June 13, 2019); see also Johnson v. McCarver, 942 F.3d 405, 414 (8th Cir. 2019) (Kelly, J., dissenting in part) (acknowledging that the Eighth Circuit has not decided whether there is a First Amendment right to record and photograph police officers, but urging its recognition). The Supreme Court has also acknowledged that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." Zemel v. Rusk,

---

³ Ness has acknowledged that the preliminary injunction stage, in this case, is not the time for "the Court to make a final ruling on the facial validity of the challenged Minnesota statute or the challenged City ordinance." Pl.'s Reply, at 1. Even so, Ness seems to view the facial invalidity of the statute and city ordinance as self-evident. The Court does not agree.

381 U.S. 1, 16-17 (1965).

Even if a First Amendment right to film is established, the right "may be subject to reasonable time, place, and manner restrictions." Kushner, 2018 U.S. Dist. LEXIS 65266, at *29 (citing Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011)). The City Ordinance's ban on "intentionally tak[ing] a photograph or otherwise record[ing] a child without the consent of the child's parent or guardian" in a public park may be one of those restrictions.

The Eighth Circuit has repeatedly wrestled with balancing First Amendment rights against private and public interests. In Phelps-Roper v. City of Manchester, 697 F.3d 678, 686 (8th Cir. 2012), the Eighth Circuit overturned one of its previous likelihood of success on the merits rulings, Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008). In the earlier Nixon case, the Eighth Circuit initially found it likely that the plaintiff could show that the "government interest in protecting individuals from unwanted speech would not extend beyond the home." Manchester, 697 F.3d at 684, 691. Therefore, the state of Missouri was enjoined from enforcing its funeral protest statute. A few years later, the City of Manchester passed a city ordinance limiting funeral protests. The same plaintiff challenged the ordinance. This time the Eighth Circuit recognized "mourners attending a funeral or burial share a privacy interest analogous to those which the Supreme Court has recognized for individuals in their homes, and for patients entering a medical facility." Id., at 692 (internal citations omitted). "Mourners are similarly situated because they must also be in a certain place at a certain time to participate in a funeral or burial and are therefore unable to avoid unwelcome speech at that place and time." Id. City Defendants in this case have raised similar concerns about children confronted with unwanted filming in public parks, especially during a required recess on a public park playground that the

10

City has agreed to share with a public school. Ness has not shown a likelihood of success on the merits against the City Ordinance.

The First Amendment prohibits states from making laws "abridging the freedom of speech." U.S. Const. Amends. I, XIV. But, "restrictions on protected expression are distinct from restrictions . . . on nonexpressive conduct." Sorrell v. IMS Health Inc., 564 U.S. 552, 566 (2011). "[T]he First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech." Id.; Young v. Ricketts, 825 F.3d 487, 492 (8th Cir. 2016). The Supreme Court has found "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376 (1968). Ness has not clearly shown that the collection of information through filming is itself expressive conduct, or, if it is a mixture of expressive and nonexpressive conduct, whether the burden imposed by the State Harassment Statute is incidental.

At this stage of the proceedings, Ness has only shown a possibility of success, but has not satisfied the more rigorous standard of showing a likelihood of success on the merits.

**B. Irreparable Harm**

The Dataphase factors do not carry equal weight. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Bandag, Inc. V. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999). Plaintiffs seeking preliminary relief must show that irreparable harm is "likely in the absence of an injunction." Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008). The party requesting injunctive relief bears the "complete

11

burden" of proving that an injunction should be granted. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418.

Ness urges the Court to decide irreparable harm based on the likelihood of success on the merits analysis, citing Elrod, 427 U.S. at 373. The U.S. Supreme Court also noted that at the time preliminary injunction was sought in Elrod in the trial court, it was "clear" that First Amendment "interests were either threatened or in fact being impaired at the time relief was sought." Id., 427 U.S. at 373-374.[4] Even assuming that the State Harassment Statute or the City Ordinance implicate Ness's First Amendment rights, Ness cannot show irreparable harm because it is not clear that her claimed First Amendment interests are threatened.

County Defendant has committed to not prosecuting Ness under the State Harrassment Statute for the activity in which she claims she wants to engage. County Defendant Mem. Opp'n Mot. [Docket No. 43] at 2, 8. Ness, in her Reply, has conceded that "preliminary injunctive relief against the County Prosecutor is no longer necessary," because County Defendant has

---

[4] Ness's motion papers focus solely on the potential injury to her claimed First Amendment right to film in a public park. Ness does not claim that her ability to collect information for public dissemination of possible CUP and JUA violations by DAF and the Success Academy is "in fact" harmed at this time by prohibiting her from approaching and filming children on public park property. As discussed further below, this weighs against finding harm. But it is also worth noting here in the irreparable harm section that First Amendment law allows restrictions of speech which leave open "ample alternative channels of communication" of information. Ricketts, 825 F.3d at 891. Ness has not shown that the information she wants to collect and the message she ultimately wants to convey to the public is "in fact" harmed by respecting the City Ordinance. Although Ness expresses a fear of arrest, she has not shown that the "'harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. FCC, 109 F.3d 418, 425 (8th Cir. 1996)); see Rodgers v. Scurr, 676 F.2d 1211, 1214 (1982) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury. . . .").

12

stated that the Harassment Statute "does not criminalize the filming and photography in which Ness claims to want to engage." Pl.'s Reply, at 3.

City Defendants cannot enforce the State Harassment Statute at the felony level, but they could potentially enforce the law at the misdemeanor level. City Defendants do not concede this right of prosecution at the misdemeanor level, if Ness approaches children on public park property with her camera and if her conduct meets the statutory definition of harassment. City Defendants also continue to assert the right to prosecute Ness for future filming[5] if it violates the City Ordinance ban on "intentionally tak[ing] a photograph or otherwise record[ing] a child without the consent of the child's parent or guardian" on public park property.

Ness argues that since she cannot be confident that she will avoid prosecution by City Defendants under the City Ordinance or the State Harassment Statute, she is entitled to a preliminary injunction to protect her First Amendment interests in filming in Smith Park. As explained above, this right has not been clearly established, and even if it becomes clearly established, may be subject to restriction. Thus, Ness has not shown irreparable harm because it is not clear that her First Amendment interests are threatened.

## C. Balance of Harms

The balance of harms factor also weighs against a preliminary injunction. It is unclear whether Ness's First Amendment rights, as she claims them, are infringed by enforcement of the City Ordinance. Ness has acknowledged that she is still allowed to film from public sidewalks and from private property. Ness has not claimed that she cannot collect the information she

---

[5] Both parties acknowledge that the City Ordinance was passed after the incidents of filming in the park claimed in Ness's Complaint. Therefore, the City Ordinance would only apply to Ness's future efforts to film in a public park.

13

needs, or disseminate the message she ultimately wants to convey, from these locations. Therefore, even assuming Ness is prohibited from filming in the manner she desires in Smith Park, it is not at all clear that she is harmed by restricting her filming to outside the park. Similarly, the State Harassment Statute is unlikely to harm Ness if the conduct in which she wishes to engage would not violate the Statute.

On the other hand, Defendants would be harmed by the issuance of a preliminary injunction because they would be unable to enforce the State Harassment Statute and City Ordinance against Ness no matter how egregious her future conduct may become.

**D. Public Interest**

The public interest factor also weighs against a preliminary injunction. Ness seeks a private order immunizing her alone from prosecution under the State Harassment Statute or the City Ordinance. Such a private order would advance Ness's interest but does not advance a public interest. In contrast, the public has a strong interest in protecting children from potential harassment. City Defendants claim the same interest for its city ordinance, an interest in protecting children from potentially dangerous interactions that may result from close up filming without a parent's permission.

There are situations which create an urgency, such as approaching election, parade, or event where protecting First Amendment rights immediately is important. In these cases the public interest is in resolving now, rather than later, whether the speakers who claim they are being prevented from speaking are being unconstitutionally restrained. In many cases it is assumed that a delayed message is a less effective message, or would be too late to have an impact.

Here, immediacy concerns do not weigh heavily. Ness has not argued that there is any urgency in collecting the information she wants to disseminate. She has presented no deadline or event in the public forum that she will miss if she does not film immediately. Ness has not argued that her message has suffered from or is less effectively conveyed to her proposed audience under her self-imposed hiatus from filming in the public forum of Smith Park.

Finally, there is a public interest in keeping open lines of communication between Ness and Defendants. Thus far, it appears City Defendants have responded to reports and investigated complaints by parents and DAF/Success Academy staff; they have not stopped Ness from filming. Jones Decl., Exs. 1, 3, 5. City Defendants have responded by interviewing Ness for her version of these incidents. Id. Ness has also used these interactions to register her many complaints against the City. Compl. ¶¶ 20-46; Jones Decl., Exs. 1, 3, 5. City Defendants have also used these interviews to discuss Ness's more general conflicts with her neighbors and have tried to suggest ways that Ness can respectfully collect the information she feels she needs without her neighbors feeling harassed. Id., Exs. 1, 3, 5. If the Court were to enjoin the City Defendants from investigating possible violations of the Harassment Statute, it could cause law enforcement and community liaisons to curtail these conversations with Ness for fear of violating an injunction. It is in the public interest to continue to address reports of harassment and to find ways to have respectful dialogue.

## IV. CONCLUSION

Ness rests her request for preliminary injunction almost entirely on the premise that "filming in a public forum information for public dissemination regarding the DAF/Success Academy controversy is fully protected by the First Amendment." From that premise, Ness

argues she is likely to succeed on the merits because a loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Ness has not demonstrated a likely threat of irreparable harm, nor is it clear that the message she claims to convey is impeded by state law or city ordinance. Ness's likelihood of success on the merits argument raises only the possibility that the challenged laws may be unconstitutional. Ness has not shown that it is likely at this stage of proceedings. The balance of harms at this preliminary stage also favors Defendants because Ness has not argued that the regulations harm her ability to collect the information she claims she needs to convey. And the public interest in public safety is supported by the status quo enforcement of the Harassment Statute and the City Ordinance at this time.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ness's Motion for a Preliminary Injunction [Docket No. 16] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 3, 2020.