# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sally Ness,

       Plaintiff,

       v.

City of Bloomington; Michael O. Freeman,
in his official capacity as Hennepin County
Attorney; Troy Meyer, individually and in his
official capacity as a police officer, City of
Bloomington; Mike Roepke, individually and
in his official capacity as a police officer,
City of Bloomington,

       Defendants.

Attorney General's Office for the State of Minnesota,

       Intervenor.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 19-2882 ADM/DTS

---

Robert Joseph Muise, Esq., American Freedom Law Center, Ann Arbor, MI and William F.
Mohrman, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiff
Sally Ness.

John M. Baker, Esq., and Katherine M. Swenson, Esq., Greene Espel PLLP, Minneapolis, MN,
on behalf of Defendants City of Bloomington, Troy Meyer, and Mike Roepke.

Beth A. Stack, Esq., and Christiana Martenson, Esq., Hennepin County Attorney's Office,
Minneapolis, MN, on behalf of Defendant Michael O. Freeman.

Elizabeth C. Kramer, Esq., and Cicely R. Miltich, Esq., Minnesota Attorney General's Office, St.
Paul, MN, on behalf of Intervenor Minnesota Attorney General.

---

## I. INTRODUCTION

    This matter is before the undersigned United States District Judge for a ruling on

Defendant Michael O. Freeman's (the "County Attorney") Motion to Dismiss [Docket No. 61];

Defendants City of Bloomington ("City"), Troy Meyer ("Officer Meyer"), and Mike Roepke's

("Sgt. Roepke") (collectively, "City Defendants") Motion to Dismiss [Docket No. 66]; and

Plaintiff Sally Ness' ("Ness") Motion for Summary Judgment [Docket No. 77].

Ness challenges the constitutionality of Minnesota Statute § 609.749, subd. 2(2) (the

"Harassment Statute"), which criminalizes harassment and stalking by "follow[ing],

monitor[ing], or pursu[ing] another, whether in person or through any available technological

means." Ness also challenges the constitutionality of Bloomington City Ordinance § 5.21(24)

(the "City Ordinance"), which prohibits any person in a City park from "intentionally tak[ing] a

photograph or otherwise record[ing] a child without the consent of the child's parent or

guardian." Ness claims the Harassment Statute and City Ordinance are unconstitutional on their

face and as applied to her First Amendment right to film and photograph in a public forum. The

Minnesota Attorney General has intervened and filed a memorandum [Docket No. 89] in support

of the constitutionality of the Harassment Statute.

For the reasons set forth below, the County Attorney's Motion to Dismiss is granted, the

City Defendants' Motions to Dismiss is granted, and Ness' Motion for Summary Judgment is

denied.

## II. BACKGROUND

### A. Ness, Dar Al–Farooq Center, and Success Academy

Ness lives in the Smith Park neighborhood in the City of Bloomington, Minnesota.

Compl. [Docket No. 1] ¶ 7. In 2011, the Dar Al–Farooq Center ("DAF") (formerly known as the

Islamic Al Farooq Youth and Family Center) applied for and obtained a Conditional Use Permit

("CUP") for a "quasi-public" site in the Smith Park neighborhood. Id. ¶ 20. The site was

previously occupied by a Lutheran high school. Id. ¶ 21.

2

In 2017, DAF opened Success Academy charter school.  Id. ¶ 37.  The City Council offered the use of Smith Park, located adjacent to the DAF/Success Academy site, for use by Success Academy's students during recess.  Id. ¶ 38.  Ness alleges that DAF and Success Academy use the Smith Park playground six times per weekday and on weekends, and that their usage has rendered the park essentially unavailable for use by the general public, including Ness and her grandchildren.  Id. ¶¶ 38–40.

Ness also alleges that since 2011, DAF and, in more recent years, Success Academy have ignored and violated the CUP and a Joint Use Agreement ("JUA") they obtained from the City. Id.  ¶¶ 20–46.  The alleged violations include parking and traffic violations and the excessive use of DAF's facilities and public facilities, including Smith Park.  Id. ¶ 36.  Ness claims the City has ignored its duties and responsibilities to enforce the CUP and JUA.  Id.

Ness describes herself as the "point person for delivering neighborhood concerns to City officials." Id. ¶ 42.  "She also maintains a public blog and Facebook page that documents many developments, observations, and concerns related to the DAF/Success Academy controversy in order to inform the public."  Id.

### B.  August 2018 Incident

In August 2018, Ness claims she was filming and photographing traffic around DAF and Success Academy to "collect[] information for public dissemination of possible CUP and JUA violations by DAF and the Success Academy."  Id. ¶ 48.  A neighborhood parent contacted City law enforcement to report Ness' possible harassment and filming of children in Smith Park.  Id.; Jones Decl. Ex. 1 [Docket No. 31].  Three individuals from the City's law enforcement interviewed Ness about the incident.  Id.  Ness told the interviewers that she was at Smith Park

with her grandchildren and may have been filming when she overheard other children at the park talking about her.  Id. at 1:06.  Ness reported that the children were asking each other if they should be afraid of her.  Id.  Believing the children were her neighbors, Ness said she wanted to assure the children that they did not need to be afraid of her and asked the children where they lived.  Id.  The interviewers informed Ness that the children's parent was concerned upon learning that Ness had approached the children in the park and asked them where they lived while also filming them.  Id. at 7:15–7:39; 13:28; 25:04–25:20.  Ness did not know if her filming had captured images of these children, but she assured the interviewers that she is careful not to post images of children on her blog.  Id. at 18:22–19:19.  Ness explained,  "I try to make this as not about people . . . . It's not specifically about an individual.  It's about the City collectively not doing their job."  Id. at 18:49–18:53.  The City of Bloomington placed the investigation of this incident on inactive status in September 2018.  Boomer Decl. [Docket No. 27] ¶ 6.

**C.  August 2019 Incident**

Just over a year later, on August 27, 2019, "Ness was collecting information for public dissemination of possible CUP and JUA violations by DAF and the Success Academy."  Compl. ¶ 50.  Ness was filming from a parked car in a private driveway across from Success Academy. Ness had the permission of the homeowner to use the driveway.  While she was filming and photographing, Ness was approached by City police officers, including Defendants Sgt. Roepke and Officer Meyer.  Id. ¶ 51; Jones Decl. Ex. 3 [Docket No. 33].  Sgt. Roepke told Ness he was responding to a harassment complaint about Ness' videotaping and photographing students arriving at school for the day.  Jones Decl. Ex. 3 at 1:14, 1:50, 8:19–8:29.  Sgt. Roepke informed Ness she had a right to film from that location, but told her that her repeated and extended

4

presence was intimidating to parents and school administration. Id. at 1:50, 7:17.  Sgt. Roepke suggested that perhaps Ness could be more sensitive to their concerns and record the information she needed more quickly and then move on.  Id. at 7:17, 7:50.  Sgt. Roepke asked Ness to study the Harassment Statute and to consider the effect of her actions, suggesting that her repeated and extended presence was "bordering on a harassment issue."  Id. at 7:17, 9:31.  Sgt. Roepke said, "if you're doing it to intimidate them . . . then we're bordering on charges against you, which we don't want . . . ." Id. at 7:17, 7:45.  After a few more minutes of conversation and listening to Ness' own complaints about DAF and Success Academy, Sgt. Roepke ended the conversation by saying he thought she was going "overboard on your oversight of all this, and it is turning into a harassment type issue." Id. at 11:43.  "Like I said, read the [harassment] statute, make sure you're not violating it so you don't get a charge on you." Id.  Sgt. Roepke then departed the scene.

Ness later obtained a police report from the August 27, 2019 incident.  Ness Decl. [Docket No. 20] ¶ 22, Ex. A. The report was prepared by Officer Meyer and states that Officer Meyer "spoke with the [Success Academy principal] and [a] parent . . . and they stated . . . [t]hey both felt intimidated and scared that Ness was filming them and are worried that she may become violent towards them or their school.  I spoke with Ness and advised how the Principal and parent felt and asked her to stop filming." Ex. A at 3.  The police report concludes, "Ness was advised that she could be charged with harassment if the parents and principal felt intimidated by her actions." Id.

Ness alleges that the City, through Sgt. Roepke and Officer Meyer, threatened to enforce the Harassment Statute against her for filming and photographing the "DAF/Success Academy

controversy," and that as a result she has ceased her filming activity.  Compl. ¶ 57.

**D.  September 2019 Incident**

On October 30, 2019, City police detective Kristin Boomer ("Detective Boomer") interviewed Ness and her attorney, Larry Frost ("Frost") to investigate a report that Ness and Frost had harassed children in Smith Park on September 23, 2019 by photographing and filming them during a Success Academy recess period.  Compl. ¶¶ 60–61, 64; Boomer Decl. ¶ 7; Jones Decl. Ex. 5 [Docket No. 35].  Detective Boomer described the interview as a "preliminary investigation" and stated she was "investigating complaints from citizens, not the City."  Jones Decl. Ex. 5 at 4:45, 30:08.  At Ness' request, the interview was conducted at her home.  Boomer Decl. ¶ 8.  Detective Boomer first interviewed Frost, who stated he accompanied Ness and her grandchildren to Smith Park on September 23 because Ness wanted him to see the "dangerous conditions for preschool children" caused by the older Success Academy children on the playground.  Jones Decl. Ex. 5 at 38:14–38:51.  Frost stated that Ness was concerned about the safety of her grandchildren at Smith Park but did not want to get in trouble for taking photographs of her grandchildren using the playground equipment, so Frost took photographs for her.  Id. at 14:29.

Detective Boomer then interviewed Ness, who stated she used her phone to make audio recordings of Frost speaking to other people at the park.  Id. at 44:06-44:08.  Detective Boomer also asked Ness about her August 2019 encounter with Sgt. Roepke.  Id. at 34:00–34:53.  Ness stated that during that encounter, Sgt. Roepke "clarified" that Ness' conduct was not harassing behavior, and told her to "be careful and read the statute."  Id. at 36:22–36:43.  Detective Boomer concluded the interview by telling Ness, "If you feel like talking to me, please give me a

call or email me and we can set up a time that's [inaudible] for you." Id. at 46:20.

Ness alleges that the interview with Detective Boomer confirmed her fears that she will be prosecuted under the Harassment Statute for filming and photographing information regarding "the DAF/Success Academy controversy," and that as a result she has stopped her filming activity.  Compl. ¶ 66.

On November 6, 2019, Detective Boomer submitted the information from the investigation to the Hennepin County Attorney's Office for their consideration of felony harassment charges against Ness and Frost under Minn. Stat. § 609.749, subd. 3(5).  Harris Decl. [Docket No. 44] ¶ 3.  The Hennepin County Attorney's office declined to bring any criminal charges against Ness or Frost for the reported conduct.  Id. ¶ 4.  The City of Bloomington also declined to prosecute Ness for her past conduct.  Glassberg Decl. [Docket No. 69] ¶ 4.

**E.  Harassment Statute**

The current version[1] of the Minnesota Harassment Statute reads in relevant part:

> Subdivision 1. Definition. As used in this section, "harass" means to engage in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of the victim regardless of the relationship between the actor and victim.

> Subd. 1a. No proof of specific intent required. In a prosecution under this section, the state is not required to prove that the actor intended to cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated, or except as otherwise provided in subdivision 3, paragraph (a), clause (4), or paragraph (b), that the actor intended to cause any other result.
> . . .

---

[1]  In March of 2020, the Minnesota legislature amended the Harassment Statute by repealing Subdivisions 1 and 1a and modifying the language of Subdivisions 2 and 3.  See H.F. No. 4137, Ninety-first Legislature, Ch. 96 (2020).  The amendments take effect August 1, 2020 and apply to crimes committed on or after that date.  Id.

Subd. 2. Harassment crimes. A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor: . . . (2) follows, monitors, or pursues another, whether in person or through any available technological or other means;
. . .

Subd. 3. Aggravated violations.

(a) A person who commits any of the following acts is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both: . . .

(5) commits any offense described in subdivision 2 against a victim under the age of 18, if the actor is more than 36 months older than the victim.
. . .

Subd. 5. Stalking.

(a) A person who engages in stalking with respect to a single victim or one or more members of a single household which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

(b) For purposes of this subdivision, "stalking" means two or more acts within a five-year period that violate or attempt to violate the provisions of any of the following or a similar law of another state, the United States, the District of Columbia, tribe, or United States territories:

(1) this section;
. . .

Subd. 7. Exception. Conduct is not a crime under this section if it is performed under terms of a valid license, to ensure compliance with a court order, or to carry out a specific lawful commercial purpose or employment duty, is authorized or required by a valid contract, or is authorized, required, or protected by state, federal, or tribal law or the state, federal, or tribal constitutions. Subdivision 2, clause (2), does not impair the right of any individual or group to engage in speech protected by the federal, state, or tribal constitutions, or federal, state, or tribal law, including peaceful and lawful handbilling and picketing.

Minn. Stat. § 609.749 (2019).

8

**F.  City Ordinance**

On October 28, 2019, the City of Bloomington's City Council approved several revisions

to City Ordinance § 5.21, including the addition of subdivision 24, which states:

> (24) No person shall intentionally take a photograph or otherwise record a child
> without the consent of the child's parent or guardian.

Ness Decl. Ex. B.  A violation of City Ordinance § 5.21(24) is punishable as a petty

misdemeanor under City Ordinance ¶ 5.22.  Ness alleges that she has ceased her filming

activities because she does not want to be penalized under the City Ordinance.  Compl. ¶ 73.

**G.  Procedural History**

On November 12, 2019, Ness filed the Complaint, which challenges the Harassment

Statute and the City Ordinance both facially and as applied to her.  In Count 1, Ness alleges that

all Defendants are liable for violating her free speech rights under the First Amendment and

42 U.S.C. § 1983.  Compl. ¶¶ 74–90.  In Count 2, Ness alleges that all Defendants are liable for

violating her due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983.  Id.

¶¶ 91–105.  Ness seeks declaratory relief, injunctive relief, and nominal damages, as well as

attorney fees, costs, and expenses against all Defendants.  Id. ¶¶ A–H.

On November 27, 2019, Ness filed a motion for a preliminary injunction to enjoin all

Defendants from enforcing the Harassment Statute and City Ordinance.  The Court denied the

motion in its entirety.  Mem. Op. Order, Feb. 3, 2020 [Docket No. 53].  On February 20, 2020,

the Minnesota Attorney General intervened for the purpose of defending the constitutionality of

the Harassment Statute.  See Notice Intervention [Docket No. 60].[2]

---

[2] The Minnesota Attorney General is permitted to intervene as a matter of right because
Ness has filed and served a notice challenging the constitutionality of a Minnesota statute.  See

All Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Ness moves for summary judgment on all claims. To the extent the motions address the constitutionality of the Harassment Statute, the Minnesota Attorney General has submitted a brief in support of Defendants' motions to dismiss and in opposition of Ness' motion for summary judgment.

### III. DISCUSSION

**A.  Defendants' Motions to Dismiss**

    **1.  Standards of Review**

        **a.  Rule 12(b)(1)**

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on the court's subject matter jurisdiction.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  A factual attack is presented when, as here, a defendant challenges the existence of the underlying jurisdictional facts.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Osborn, 918 F.2d at 729 n.6 (internal citation omitted).

        **b.  Rule 12(b)(6)**

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in

---

Fed. R. Civ. P. 5.1; 28 U.S.C. § 2403; Pl.'s Notice Constitutional Question [Docket Nos. 45, 46]. As required by Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), the Court hereby certifies to the Minnesota Attorney General that the constitutionality of Minn. Stat. § 609.749 has been drawn into question.

the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  The Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2) (alterations omitted).

**2.  County Attorney's Motion to Dismiss**

Ness has sued the County Attorney in his official capacity because he is the government official responsible for investigating and prosecuting the Harassment Statute.  Compl. ¶¶ 16, 17. The County Attorney moves for dismissal under Rule 12(b)(1) for failure to allege Article III

standing, and under Rule 12(b)(6) for failure to state a claim.

### a. Standing

The County Attorney argues Ness' claims against him must be dismissed for failure to allege facts establishing Article III standing, which is a prerequisite to subject matter jurisdiction.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992).  "Article III standing is a threshold question in every federal court case."  United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003).  The party invoking federal jurisdiction has the burden of establishing standing.  Lujan, 504 U.S. at 560.  To meet this burden, a plaintiff must show:  (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct of the defendant; and (3) a likelihood that a favorable ruling will redress the alleged injury.  Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005) (citing Lujan, 504 U.S. at 560–61).

"To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution.  Rather, the plaintiff needs only to establish that [s]he would like to engage in arguably protected speech, but that [s]he is chilled from doing so by the existence of the statute."  281 Care Comm. v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011) (internal citation omitted).  In evaluating First Amendment standing, the relevant inquiry is whether the plaintiff's decision to chill her speech is "objectively reasonable."  Id.  "Reasonable chill exists when a plaintiff shows 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'"  Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)) (alteration in original).

Ness' decision to chill her speech was not objectively reasonable for two principle reasons.  First, her intended conduct is not proscribed by the statute.  Subdivision 2(2) of the Harassment Statute prohibits harassment by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means."  Minn. Stat. § 609.749 subd. 2(2).  "Monitor" means "to watch, keep track of, or check usually for a special purpose." Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/monitor (last visited July 22, 2020).  For example, a harasser might monitor "another" by attaching a tracking device to the person's car to track their location.  See State v. Hormann, 805 N.W.2d 883, 886 (Minn. Ct. App. 2011).  Additionally, the definition of "harass" in Subdivision 1 and the word "another" in Subdivision 2(2) suggest that harassment under Subdivision 2(2) must target an individual victim.  As such, Subdivision 2(2) does not extend to the monitoring of a physical space, an issue, or a random crowd of people.

Ness claims she intends to monitor an issue—the non-compliant use of DAF's facilities and the use of Smith Park—by filming and photographing the activity in the physical vicinity of DAF, which may include filming and photographing people.  Compl. ¶¶ 36, 47, 70, 71; Ness Decl. ¶¶ 6, 18, 28.  Ness does not claim a desire to surveil individuals or track their location by filming or photographing them once they leave DAF's neighborhood.  As Ness herself has stated, "I try to make this as not about people . . . . It's not specifically about an individual.  It's about the City collectively not doing their job."  Jones Decl. Ex. 1 at 18:49–18:53.  Thus, as the County Attorney and the City both acknowledge, Ness' intended conduct is not proscribed by the Harassment Statute because she is not tracking or monitoring a particular individual.  See County Attorney Mem. Supp. Mot. Dism. [Docket No. 63] at 8–9 (stating the Harassment Statute

does not prohibit Ness from filming and photographing the use of DAF-related activities in the physical vicinity of DAF, including people using the neighborhood park); City Reply Mem. [Docket No. 82] at 16 ("[W]hat Ness says she wants to do—filming and photographing related to potential code violations and 'excessive use' of private and public facilities—is not proscribed by the harassment statute.").  Because Ness' intended conduct does not violate the Harassment Statute, her decision to chill her speech was not objectively reasonable.  See Republican Party of Minn. v. Klobuchar, 381 F.3d 785, 792–93 (8th Cir. 2004) (affirming dismissal of First Amendment challenge for lack of standing because conduct was not proscribed by the challenged statute).

Second, Ness does not face a credible threat of prosecution under the Harassment Statute for what she claims she wants to do.  The County Attorney and the City have declined to prosecute Ness under the Harassment Statute for her past conduct, and Ness does not allege that she intends to engage in activities that materially differ from that past conduct.  Thus, Ness lacks standing to challenge the Harassment Statute.  See, e.g., Lawson v. Hill, 368 F.3d 955, 957–58 (7th Cir. 2004) (holding that a plaintiff who had been told by the police chief that her conduct was illegal lacked standing to challenge a flag-desecration statute because the prosecutor declined to prosecute plaintiff's conduct under the statute and thus no credible threat of prosecution existed).

Resisting this conclusion, Ness argues she was threatened with prosecution because she was told by Sgt. Roepke and Officer Meyer in August 2019 to halt her speech or face prosecution.  Ness relies on the police report from the incident, which states that Officer Meyer "asked [Ness] to stop filming," and that "Ness was advised that she could be charged with

14

harassment if the parents and principal felt intimidated by her actions."  Compl. ¶ 54.  However, the bodycam footage of the encounter establishes that Sgt. Roepke expressly told Ness "this is a public place, . . . you have a right to . . . take pictures in a public place or video or, or anything like that.  There's not an issue with that. . . . [B]ut if you're doing it in a means to intimidate them or to harass them, then it becomes a problem."  Jones Decl. Ex. 3 at 1:50.  Sgt. Roepke also told Ness "if you want to take some pictures, come and take some pictures and then move on." Id. at 7:50.  When Ness described the August 2019 encounter to Detective Bloomer months later during her interview, Ness stated that Sgt. Roepke "clarified" Ness' conduct was not harassing behavior, and told her to "be careful and read the statute."  Jones Decl. Ex. 5 at 36:22–36:43. The police report of the August 2019 incident, particularly when viewed together with Sgt. Roepke's statements and Ness' own recollection of the incident, does not rise to the level of a credible threat of prosecution.  Ness' decision to chill her speech, after being told by Sgt. Roepke that she had a right to take videos and that her conduct was not harassing behavior, was not based on an objectively reasonable fear of prosecution.

Ness also contends she was threatened with prosecution because Detective Boomer interviewed her in October 2019 and told Ness she was being investigated for allegedly violating the Harassment Statute.  However, Detective Boomer described the interview as a "preliminary investigation," informed Ness that stated that she was "investigating complaints from citizens, not the City," and concluded the interview by telling Ness to contact her if Ness wanted to talk with her.  Jones Decl. Ex. 5 at 4:45, 30:08, 46:20.  Following Detective Boomer's investigation, the City and County Attorney both declined to prosecute Ness for her behavior because her conduct is not proscribed by the Harassment Statute.  Detective Boomer's investigation of

citizen complaints does not amount to a credible threat of prosecution.  See Empower Texans, Inc. v. Nodolf, 306 F. Supp. 3d 961, 967 (W.D. Tex. 2018) ("The government's review of a private citizen's complaint does not create a 'threat of prosecution' substantial enough to meet the Constitution's injury-in-fact requirement.").

Ness has not shown that her decision to chill her speech due to the existence of the Harassment Statute is objectively reasonable.  The claims against the County Attorney are dismissed for lack of Article III standing.

### b.  Failure to State a Claim

Having concluded that Ness lacks Article III standing to bring her claims against the County Attorney, the Court is without subject matter jurisdiction to determine whether the Complaint states a plausible claim for relief against the County Attorney under Rule 12(b)(6).

### 3.  City Defendants' Motion to Dismiss

In its Motion to Dismiss, the City argues:  (1) the claims for money damages against Sgt. Roepke and Officer Meyer must be dismissed under the doctrine of qualified immunity; (2) Ness lacks standing to sue under the Harassment Statute; and (3) Ness has failed to state valid claims that the Harassment Statute and City Ordinance violate the First Amendment or Due Process Clause of the Fourteenth Amendment.

### a.  Claims Against the Individual Officers

The claims against Sgt. Roepke and Officer Meyer are based on Ness' August 2019 encounter with the officers while she was filming Success Academy students arriving at school. Compl. ¶¶ 50–51; Jones Decl. Ex. 3 at 11–12.  Ness alleges the officers "deprived [her] of her right to freedom of speech in violation of the First Amendment."  Compl. ¶ 75.  The City

16

Defendants argue the claims for money damages against the officers in their individual capacities must be dismissed under the doctrine of qualified immunity.

"Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). A police officer is entitled to qualified immunity unless the facts shown by the plaintiff establish "(1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful." Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013). "The issue of qualified immunity is a question of law for the court, rather than the jury, to decide." Littrell v. Franklin, 388 F.3d 578, 584 (8th Cir. 2004).

The officers are entitled to qualified immunity because Ness cannot satisfy either of the two required prongs to exempt her claim from qualified immunity protection. Ness' constitutional rights were not violated because, as discussed above, bodycam footage of the August 2019 incident establishes that the officers did not stop Ness from filming. To the contrary, Sgt. Roepke told Ness she had a right to take pictures and video, and that she could "come and take some pictures and then move on." Id. As Ness herself recalled when recounting the incident to Detective Boomer, Sgt. Roepke told Ness that her conduct was not harassing behavior. Thus, the officers did not violate Ness' right to engage in filming activity.

Even if the officers had violated Ness' First Amendment rights, which they did not, the contours of Ness' First Amendment right to record were not so clearly established that a

reasonable officer would have known that his actions were unlawful. "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotation marks and internal citation omitted). Additionally, "the clearly established law must be particularized to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability by simply alleging violation of extremely abstract rights." Id. at 552 (quotation marks and citations omitted, alteration in original).

"[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances." Phelps-Roper v. Ricketts, 867 F.3d 883, 891 (8th Cir. 2017) (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942)) (alteration in original). Indeed, "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." Zemel v. Rusk, 381 U.S. 1, 17 (1965). Here, Ness has not provided authority clearly establishing a First Amendment right to record private individuals who do not consent to being filmed, particularly when, as here, the individuals are required by law to be at the location where they are being recorded.[3] To the extent such a right exists, it was not so clearly established that a reasonable officer would have known that his actions were unlawful. Because the extent of Ness' right to record would not have been clear to a reasonable police officer, the officers are entitled to qualified immunity.

---

[3] Minnesota law generally requires children between 7 and 17 to attend school. See Minn. Stat. § 120A.22, subds. 5–6.

18

### b.  Standing to Sue Under Harassment Statute

The City argues Ness lacks standing to challenge the Harassment Statute.  For the reasons stated above, the Court agrees.

### c.  Failure to State a Claim that the City Ordinance is Unconstitutional

Ness challenges the constitutionality of the City Ordinance, which states:  "No person shall intentionally take a photograph or otherwise record a child without the consent of the child's parent or guardian."  § 5.21(24).  This provision applies to all City parks.  § 5.21.  Ness alleges the City Ordinance is unconstitutional, both facially and as applied to her.  The City Defendants argue Ness has not plausibly alleged that City Ordinance violates the First or Fourteenth Amendments.

### i.  First Amendment Facial Claim

The City Defendants argue that Ness' First Amendment facial challenge to the City Ordinance fails because there is no First Amendment right to record children without their consent.[4]  The City Defendants contend that the mere act of recording is not speech, and even if it were the City Ordinance is a constitutional restriction on recording activity.  Ness responds that the City Ordinance is unconstitutional because it is a content-based prior restraint on First Amendment activity in a traditional public forum.

---

[4] The City Defendants argue that "*[e]ven if Ness had standing to sue*, her facial challenge to the ordinance under the first Amendment would fail."  City Defs.' Mem. Supp. Mot. Dism. [Docket No. 68] at 10 (emphasis added).  However, the City Defendants' briefing does not include an argument for why Ness might lack standing to challenge the City Ordinance.  Ness' intended conduct will include photographing and filming children in a City park without parental consent.  This conduct is proscribed by the City Ordinance, and the City has not disavowed an intent to charge Ness with violating the City Ordinance if she were to engage in this conduct.  Under these circumstances, Ness' decision to chill her speech due to the existence of the City Ordinance is objectively reasonable.  Ness has standing to challenge the City Ordinance.

The First Amendment offers some protection for recording and photography.  See, e.g., Chestnut v. Wallace, 947 F.3d 1085, 1090 (8th Cir. 2020) (collecting cases concluding that the First Amendment protects recording of police); Josephine Havlak Photographer, Inc. v. Village of Twin Oaks, 864 F.3d 905, 913 (8th Cir. 2017) (applying First Amendment analysis to ordinance regulating commercial activity, including photography, in a public park).  However, "[e]ven in a public forum the [State] may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  Phelps-Roper, 867 F.3d at 891 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)) (emphasis omitted).

### A.  Content Neutral

"The constitutionality of [a statute] regulating the exercise of protected speech in a public forum depends in large part on whether it is content based or content neutral."  Id. at 892 (alteration in original).  "The commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  Josephine Havlak Photographer, 864 F.3d at 914 (quotations omitted).  Here, the City Ordinance makes no distinction based on who is the photographer or recorder, what use will be made of the photograph or recording, or what message will ultimately be conveyed.  Because the limitation on its face does not draw distinctions based on a speaker's message or viewpoint, it is content neutral.  See, e.g., Phelps-Roper, 867 F.3d at 892 (finding an ordinance content neutral "because it simply limits when and where picketing and other protest

activities may occur in relation to a funeral or burial service without regard for the speaker's viewpoint") (quotations omitted).

Ness argues the City Ordinance is content based because a City official would have to examine the content of the film to determine whether the filming was unlawful. Ness cites no precedent to support this definition of "content based." Ness' definition differs from that of the Eighth Circuit, which states that the "commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on *the message a speaker conveys*." Josephine Havlak Photographer, 864 F.3d at 914 (emphasis added). The City Ordinance does not on its face draw distinctions based on the message a speaker conveys. The Ordinance is content neutral.

### B. Important Government Interest

"The government may restrict disruptive and unwelcome speech to protect unwilling listeners when there are other important interests at stake. Where there are competing interests and values, courts must find an acceptable balance between the constitutionally protected rights of law-abiding speakers and the interests of unwilling listeners." Phelps-Roper, 867 F.3d at 893 (internal quotation marks and citation omitted).

Here, the City has an important government interest in protecting children's privacy, protecting children from intimidation or exploitation, and coordinating competing uses of the City parks. See, e.g., id. at 893–94 (recognizing protection of people who are physically or emotionally vulnerable as a significant government interest); Josephine Havlak Photographer, 864 F.3d at 913 (holding that a municipality may "regulate competing uses of a traditional public forum [such as] a park") (internal quotation marks omotted).

21

Ness argues that the City Ordinance is underinclusive because if a person takes a step outside a City park and films children from the street, the City Ordinance will not be violated. Ness contends this underinclusiveness undermines the City's claimed interest in protecting children's privacy and preventing them from being exploited or intimidated. However, requiring would-be recorders to collect images from a distance, rather from inside a City park, makes it less likely that a child in the park will feel frightened or that the child's identity will be ascertainable. Thus, the City's important government interest in protecting children is not undermined by allowing a person to record children from just outside a City park's boundaries.

### C. Narrowly Tailored

"[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Josephine Havlak Photographer, 864 F.3d at 915 (quoting Ward, 491 U.S. at 799). "[T]he government's choice among the means to accomplish its end is entitled to deference." Id. at 915–16 (quoting Ass'n of Cmty. Orgs. for Reform Now v. St. Louis Cty., 930 F.2d 591, 595 (8th Cir. 1991)).

As discussed above, the City Ordinance promotes the important government interest in regulating the competing uses of City parks and protecting children's privacy and sense of safety and freedom from intimidation while playing in a City park. This interest would be achieved less effectively without the City Ordinance. The City Ordinance is narrowly tailored.

### D. Ample Alternative Channels

The City Ordinance leaves open ample alternative channels to gather information through recording. As noted earlier, the City Ordinance allows a person to record or photograph from

just outside the perimeter of a City park, thereby allowing the person to collect the information needed to ultimately convey their message.

Because the City Ordinance is content neutral, is narrowly tailored to serve an important governmental interest, and leaves open ample alternative channels to collect and communicate information, Ness has not plausibly alleged that the City Ordinance is facially invalid under the First Amendment.

### ii.  First Amendment As-Applied Claim

Ness has also failed to plausibly allege that the City Ordinance, as applied to her, violates the First Amendment.  Ness alleges the City's motivation in approving the City Ordinance was "to silence Plaintiff Ness by prohibiting her from videotaping and photographing the activities of DAF and the Success Academy."  Compl. ¶ 68.  Taking this allegation as true, legislative motive is irrelevant if, as here, the ordinance is neutral on its face.  See Phelps-Roper, 867 F.3d at 892 ("[R]egardless of any evidence of the Nebraska legislature's motivation for passing the [statute], the plain meaning of the text controls, and the legislature's specific motivation for passing a law is not relevant, so long as the provision is neutral on its face.") (internal quotation marks omitted).

Ness' as-applied claim fails for the additional reason that her allegations show that she can collect the information she needs by filming from public sidewalks, public streets, and private property.  Compl. ¶ 47.

### iii.  Fourteenth Amendment Due Process Claim

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

Ness alleges the City Ordinance is "vague," does not provide "fair warning," and lacks "explicit standards."  Compl. ¶¶ 81, 85, 93–96.  However, the Complaint does not identify any word or phrase in the City Ordinance that Ness believes is vague, and does not specify how the City Ordinance lacks explicit standards or fails to provide fair warning.  The conclusory allegations in the Complaint do not satisfy the plausibility standard under Rule 12(b)(6).  Ness' Fourteenth Amendment due process claim is dismissed.

**B.  Ness' Motion for Summary Judgment**

Defendants' Motions to Dismiss have been granted in their entirety.  As a result, Ness' Motion for Summary Judgment is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.    Defendant Michael O. Freeman's Motion to Dismiss [Docket No. 61] is **GRANTED**;

2.    Defendants City of Bloomington, Troy Meyer, and Mike Roepke's Motion to Dismiss [Docket No. 66] is **GRANTED**; and

3.    Plaintiff Sally Ness' Motion for Summary Judgment [Docket No. 77] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  July 23, 2020

24